(112 App. Div. 265)

## HIRSCH v. AMERICAN DISTRICT TELEGRAPH CO.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

1. CARRIERS—WHAT CONSTITUTE—CORPORATION FURNISHING MESSENGERS.

    A telegraph company which maintains a staff of messenger boys, which it furnishes to its patrons, is not a common carrier as to the services rendered by the messengers.

2. CONTRACTS—CONSTRUCTION—SERVICES.

    Where a telegraph company maintained a staff of messenger boys, which it furnished to persons needing their services, making a charge based upon the time employed, and plaintiff told the manager of one of the offices that he wanted a boy, and accepted one who was offered to him, and delivered to the boy a package, with instructions to deliver it at a certain place, such facts did not show a contract between plaintiff and the company for the delivery of the package, rendering it liable on failure of the boy to deliver the package.

Appeal from Special Term, New York County.

Action by Morris J. Hirsch against the American District Telegraph Company. From a judgment of the Appellate Term (95 N. Y. Supp. 562), affirming a judgment of the City Court of the City of New York in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGH-LIN, CLARKE, and HOUGHTON, JJ.

Henry D. Estabrook (Francis Raymond Stark, on the brief), for appellant.

Benjamin N. Cardozo, for respondent.

INGRAHAM, J. The complaint alleges that in the city of New York, on or about the 16th day of January, 1904, the defendant, for a good and valuable consideration, through its lawful and authorized representatives received from one Joseph S. Jantzen a package or envelope containing the sum of $500, lawful money of the United States, to be delivered by the defendant and deposited to the credit of the said Jantzen in the Rutherford National Bank at Rutherford, N. J.; that thereupon, in consideration thereof, the defendant undertook, promised, and agreed with the said Jantzen to transport and deliver the said package containing the said sum of money to the Rutherford National Bank at Rutherford, N. J.; that the defendant has failed and omitted to deliver said sum of money to the Rutherford National Bank at Rutherford, N. J., and has failed and refused to pay the said sum of money to the said Jantzen, although the same has been duly demanded. The defendant admitted its incorporation, and that it refused to pay the sum of money to Jantzen, and denied each and every other allegation of the complaint.

The plaintiff's cause of action is thus based upon its receipt of this package containing $500, and an express contract to deliver it to the bank at Rutherford, a violation by the defendant of that contract, and a refusal of the defendant to return the package or money to the plaintiff. The court charges the jury:

"So that you will find whether or not there was $500 in the envelope; whether it is a fact that it contained a large amount of money, as claimed by Jantzen. If you find that to be so, I charge you that was sufficient to put them on their inquiry, even though the exact amount was not stated. If it was stated it contained a large amount of money, the amount not being fixed, they were put upon their inquiry, and there was knowledge to them of a valuable package, and if they accepted it without knowing its exact contents. that would be their own negligence; and if after that they gave it to their servant for delivery, they are responsible for its delivery. If, however, Mr. Jantzen handed it to one of the boys without notice of its valuable contents, then I charge you you find for the defendant."

At the request of counsel for the defendant, the court subsequently charged the jury that, unless the defendant's manager was notified by Jantzen that the envelope tendered by him contained money, and he expressly assented on behalf of the company to carry it to the bank at Rutherford, and unless the jury found from this evidence that Hegel, the defendant's manager, agreed on behalf of the defendant, not only to carry a package of money, but to carry it to a specific place, namely, the Rutherford National Bank, at Rutherford, N. J., the plaintiff had not established a contract on the part of the defendant, and their verdict should be for the defendant. The jury found a verdict for the plaintiff, which has been affirmed by the Appellate Term. So that, considering the pleading and these instructions to the jury, the only question is whether the evidence was sufficient to justify the jury in finding that a contract was made by the defendant to carry this sum of money to Rutherford, N. J.

The plaintiff's assignor testified that on the morning of February 16, 1904, he visited the branch office of the American District Telegraph Company at 845 Broadway. That he had $500 in bills with him in an envelope addressed to "J. Jantzen, care of the Rutherford National Bank, Rutherford, N. J." That there was also a deposit slip in the envelope. That at this branch office of the defendant corporation he saw a Mr. Hegel, who had always been in charge when he had been there. That he told Hegel that he wanted a boy to take a package to the bank at Rutherford, and Hegel called up a boy from the back of the office, "Here, you have got to go to Rutherford." That the witness looked at the boy, spoke a few words to him, and said to Hegel, "He won't do." That Hegel called up another boy, to whom Jantzen also objected, and then said, "Hegel, look here. You know there is a lot of money in this package, and it is going to the bank; have you no other boys?" To which Hegel replied, "No; I have no other boys." To which the witness replied, "I will have to go to some other office, and try to get a boy there." That, as Jantzen turned from the counter, a tall boy came in, and then Hegel said, "Here, here is the sergeant, and he is all right." Jantzen spoke to this boy, and asked him whether he had ever been to Rutherford for him before, and the boy said he had, to the bank. Jantzen then handed the boy the envelope, saying, "Hurry

up and catch that train 9:30 from Chambers street," and the boy took the package and started. That he delivered the package to the boy in the presence of Hegel in the office. Subsequently it was ascertained that the boy had never arrived at the bank, and neither Jantzen nor the defendant has since seen him or the $500. Hegel, the manager of the defendant's branch office, was called for the plaintiff, and testified that he was a clerk in the employ of the defendant at the Morton House branch. That he sent out calls, and kept a record of them. That Jantzen called thereon February 16th. That when he called the witness was in charge of the office in the line of the messenger service. That he remembered getting the boy for Jantzen. Upon cross-examination he testified that the charges of the defendant are based upon the service of the boy by the length of time that he is employed; that is to say, by the hour, regardless of the value of anything intrusted to him. That when a boy is called, the witness does not know what he is called to do. That the boys are called upon to do anything and everything within their strength and capacity. Plaintiff then rested, and the defendant moved to dismiss the complaint, which was denied, and defendant excepted. On behalf of the defendant, Hegel was recalled, and testified that Jantzen never told him that there was any money in the envelope; that he never saw the envelope; that he had sent boys for Jantzen to Rutherford before, and remembered Jantzen on that day telling the witness he wanted a boy to catch a train; that Jantzen did not say that he wanted a boy to go to the bank. He testified that he had sent messengers for Jantzen to Rutherford four or five times, but not to the bank. The plaintiff having rested, the defendant renewed the motion to dismiss the complaint, which was again denied, and defendant excepted. The court submitted the case to the jury, who found a verdict for the plaintiff. The learned Appellate Term in affirming this judgment said:

"It was competent for the jury to find from the proofs that a special contract had been made for the carriage and delivery of this package, and that the defendant's agent, Hegel, was acting within the apparent scope of his authority when making this contract."

That upon the conceded facts the plaintiff's judgment was consistent simply with the defendant's failure to perform a special contract for the transportation of this parcel.

I agree with the learned counsel for the defendant that the defendant is not a common carrier, and neither the learned Appellate Term nor counsel for the plaintiff seeks to sustain this judgment upon the liability imposed upon a common carrier. The defendant was incorporated as a telegraph company, and by the certificate of incorporation the defendants associated themselves for the purpose of owning, constructing, using, and maintaining lines of wires of electric telegraph in the state of New York. The route of their telegraph lines was through and along the streets of the city of New York, connecting offices and dwelling houses and any other buildings by means of said telegraphs with the police stations; the object of establishing said line being to have an alarm telegraph from any building to any station desired, to notify a proper officer that their services are needed at the point from which said telegraph gives a signal. In addition to the telegraph service thus

established, the company maintains a staff of messenger boys, which it furnishes to its patrons or others needing their services, for which a charge is made based upon the time employed. There is no evidence that the defendant was incorporated to or assumed to carry or deliver packages or other property; that it was incorporated to or actually exercised any of the duties of a common carrier. Jantzen went to the defendant's office, and told its manager that he wanted a boy. He rejected two boys offered by the defendant as unfit for the service that he required, and finally accepted the third boy who appeared and was offered to him. He delivered a package containing money to the boy, with instructions to catch a particular train, and to deliver the package at a particular place, and for that he promised to pay to the defendant their usual charge for the services of a messenger boy. There was no request of the defendant to deliver the package, no delivery of the package itself into the possession of the defendant or its manager after the boy had been accepted by Jantzen as fit for the work he desired him to do. Jantzen delivered the envelope, not to the manager of the defendant, but to the boy that he had accepted, and gave directions as to what the boy was to do. If this package had been delivered to an express company. or to any corporation whose business it was to transport articles, or who were common carriers, a different question would be presented; but here a corporation organized to maintain a line of telegraph wires, who, in addition thereto, provides for its patrons messenger boys, that it hires out for a stipulated price, based upon the time occupied, is asked to furnish a messenger boy to perform a particular service, furnishes such a messenger, whose services are accepted by a patron, and who is intrusted with a particular duty by the patron, which he fails to perform. The jury were instructed by the trial judge that if Jantzen had failed to inform the manager of the defendant as to the value of the package that was intrusted to the boy, the defendant would not be liable; but I do not think that liability can be predicated upon a knowledge by the defendant of the particular service that the boy was expected to perform. If the defendant is responsible, it would be because it had undertaken by special contract to deliver this package to the bank at Rutherford, N. J. Whether it knew the contents of the package or not, if it made such a contract and failed to perform it, the company would be responsible for damages; but it seems to me that there is no evidence that justified a finding that the defendant made any such contract, or undertook to deliver any package for the plaintiff. What the defendant undertook to do was to furnish Jantzen a messenger. It furnished him a messenger whom Jantzen accepted, and a failure of the messenger to perform the service required of him was not the breach of a contract or engagement made by the defendant. The plaintiff, however, claims that the defendant became liable for the loss of this money based upon the principle that, it being the employer of the boy to whom was intrusted this money, and whose larceny resulted in its loss, it was liable for his negligence or malfeasance; and a line of cases of which Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172, is the latest, is relied on. These were cases where a defendant was sued by a third person for injuries sustained by the negligence of one who it was claimed was the servant of the defendant, and for whose act in

the performance of the duties imposed upon him the defendant was liable; a ground of liability which would be inconsistent with that alleged in the complaint. Under this complaint the liability of the defendant can be predicated only upon an express contract between Jantzen and the defendant by which the defendant undertook to deliver the package. In Howard v. Ludwig, supra, it is stated in the prevailing opinion:

"If, as claimed by the defendants, the contract was that the express company was to deliver all of the goods sold by the defendants on Staten Island each week for thirty dollars, and the company was to be responsible for the goods, if lost, then unquestionably the defendants would not be liable in this action. But if, instead thereof, the arrangement was that the defendant should pay thirty dollars a week for the team, truck, and driver, and they took charge of the delivery of the goods, sending the team to Staten Island or around New York making deliveries, as the exigency of their business required, then the relation of master and servant was created between them and the driver, and they became liable for his negligent acts."

The dissent was based upon the fact that it was established that the defendants did not employ the driver, did not pay him, and could not discharge him; that the express company

—"had the right to discharge the driver at will, to send him, or some one else in his place, on any day; for the express company, and not the defendants, were responsible for losses which occurred in the delivery of the goods, just as other express companies are liable in the absence of special agreement. So the right of selection of employés necessarily rested with the express company, and was exercised by them. With such facts established by undisputed evidence given by disinterested witnesses, there was no possible basis upon which the jury could rest a finding that this driver was the servant of these defendants, and hence there was no question which the court could submit to the jury, and an attempt to submit such a question was without legal authority."

Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, affirmed on appeal, 171 N. Y. 677, 64 N. E. 1118, discusses the same question. There the defendants engaged six two-horse vans for ten days at the rate of eight dollars per day per van. The owners of the vans agreed to furnish the defendants with the six two-horse vans, driver, and helper, to be responsible for the proper collection and prompt return of all C. O. D. moneys, and for the safe delivery of all goods intrusted to their charge. Under this contract the vans thus hired were engaged in delivering goods from the defendant's store to the purchasers, and it was held that the driver of one of these vans was an employé of the defendants, who was responsible for his negligence. So that in this case it was held that the employé who caused the accident was the servant of the employer, which would be equal to holding that this telegraph boy was the servant of the defendant, and this case was affirmed by the Court of Appeals at the same term that decided the case of Howard v. Ludwig, supra; the memorandum of the court being, "Judgment affirmed, with costs, on the authority of Howard v. Ludwig: no opinion."

It might be that as to third parties this messenger boy would be the servant of both or either, but that could have no relation to the question whether, as between the general employer who furnished the servant and the person who engaged the messenger for a particular work,

the general employer was responsible for the misfeasance or malfeasance of the messenger. Nor was the case submitted to the jury upon any such theory. The question that was submitted to them was whether or not there was a special agreement by the defendant corporation to deliver this particular package to the bank at Rutherford, and the jury were especially instructed that, in the absence of such an agreement, they must find for the defendant. That instruction is the law of this case, and, as the evidence did not sustain a finding that there was such a special agreement, the verdict was not sustained by the evidence.

It follows that the determination of the Appellate Term and the judgment and order of the City Court must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.