Argued January 2, affirmed February 16, 1915.

# PORTLAND *v.* WESTERN UNION TELEGRAPH CO.

### (146 Pac. 148.)

**Municipal Corporations—Regulation of Occupations—Powers.**

1. A city having power to regulate occupations may not absolutely prohibit a legitimate business that may be pursued as of common right.

**Licenses—Occupations—Conditions.**

2. A city having the power to regulate occupations may exact a license to follow a particular occupation and make it unlawful to pursue the occupation without a license, and the mere fact that the license exacted produces revenue is not conclusive evidence of an exercise of the power to tax.

**Licenses—Occupations—Bond of Licensee.**

3. A city may, under its power to regulate occupations, by requiring the payment of a license fee, require licensees to execute reasonable bonds for the faithful performance of the services authorized, to operate as an indemnity for damages which individuals may sustain by reason of fraudulent conduct of the business.

**Licenses—Occupations—Police Power of City.**

4. A city ordinance requiring persons, firms or corporations, engaging in the messenger business, for the delivery of packages, notes, letters or the purchase and delivery of merchandise for another, to pay an annual license fee of $100 and to execute a bond for $1,000, conditioned on the faithful performance of the business, is a proper exercise of the police power of the city enacted to regulate occupations.

> [As to constitutional limit on power to impose license or occupation taxes, see note in 129 Am. St. Rep. 249.]

**Licenses—Occupations—Messenger Service.**

5. A telegraph company engaging in the business of transmitting and receiving messages, which holds itself out to furnish in a city, for their customers, messengers for delivery of notes, packages, samples and advertising matter, and which maintains in various places in the city call-boxes, by the use of which customers may secure messengers,

and which fixes the compensation for the services, a part of which it retains and a part of which the messengers retain, is engaged in the messenger business within a city ordinance requiring a license fee for conducting the business and a bond conditioned on the faithful carrying on of the business.

Municipal Corporations — Violation of Ordinance — Evidence—Sufficiency.

6. A city instituting a prosecution for the violation of an ordinance need only prove the violation by a preponderance of the evidence, either direct or circumstantial.

From Multnomah: DALTON BIGGS, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE MOORE.

The defendants, the Western Union Telegraph Company, a corporation, and W. A. Robb, its manager, were accused in the municipal court of Portland of violating city ordinance No. 25,667, in that they in the year 1913 willfully engaged within the municipality in the general messenger business for hire, and that, without having first procured a license therefor, they unlawfully delivered letters, packages, etc., contrary to the provisions of such ordinance and against the peace of the city.   Pleas of not guilty were interposed to the complaint whereupon the cause was tried and the defendants found guilty as charged.   From such judgment they appealed to the Circuit Court of the State of Oregon for Multnomah County, where the cause was retried without the intervention of a jury, upon an agreed statement of facts, and the defendants, having again been convicted, appealed from the resulting judgment to this court.        AFFIRMED.

For appellants there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin* and *Mr. Hall S. Lusk,* with an oral argument by *Mr. Lusk.*

For respondent there was a brief and an oral argument by *Mr. Lyman E. Latourette,* Deputy City Attorney.

Opinion by MR. CHIEF JUSTICE MOORE.

The questions to be considered are whether or not the ordinance referred to, requiring corporations doing a messenger business to execute to the city a bond, is valid, and, if so, does the service performed by the Western Union Telegraph Company bring it within the provisions of such municipal legislation? The ordinance referred to provides generally that no person, firm or corporation shall engage in the messenger business for the delivery of packages, notes, letters, etc., or the purchase or delivery of merchandise, or "other service incident to what is commonly known as a general messenger business or service for hire" within the City of Portland without first having obtained a license therefor from the municipality: Section 1. The fee for such license shall be $100 a year payable in advance: Section 2. Each recipient of a license is requested to execute to the city and file with the auditor, at the time the license is delivered, a satisfactory bond in the sum of $1,000, conditioned that he will faithfully deliver any goods, packages, notes, etc., that may be entrusted to him and pay to the party entitled thereto any damages that may accrue from his failure so to do and any person aggrieved by such neglect is granted a right of action upon the bond in the name of the city: Section 3. Nothing in the ordinance shall prevent any licensee from employing servants to assist in carrying on the messenger business: Section 4. All messengers in the employ of any licensee are required, when on duty, to wear, conspicuously displayed, a badge of their employer: Section 5.

Any person, firm or corporation violating any of the provisions of the ordinance shall upon conviction thereof in the municipal court, be punished by a fine of not less than $5.00 nor more than $100: Section 6. "The provisions of this ordinance shall not apply to any company soliciting or delivering messages or merchandise in the City of Portland which messages or merchandise is a part of their own business": Section 7.

The stipulation of facts, upon which this cause was tried, shows that the Western Union Telegraph Company is a corporation and maintains at Portland, Oregon, an office where messages are transmitted and received. Communications by its wires for patrons in that city are delivered to them, and, in order to facilitate the dispatch of such service, messengers are kept for that purpose. The company issues advertisements which read:

"Telegraph and Cable. Western Union. Uniformed messengers furnished for the delivery of holiday goods." "American District Telegraph Company. Uniformed messenger service. The best in the long run, the best in the short run. Messengers furnished for the delivery of notes, invitations, packages, catalogs, samples and advertising matter. Pull the call-box or telephone the Western Union." "Notice: This company does not undertake delivery of packages, notes, letters, communications, or the purchase or delivery of merchandise for hire. Its sole business is the furnishing of messengers at a stated compensation for the time such messengers are employed by patrons. The Western Union Telegraph Company."

The company installs in various places of business in the city call-boxes, by the use of which customers may secure messengers, a sufficient number of whom

are always kept to accommodate patrons in delivering telegrams. The company also receives calls for messengers who deliver packages, notes, etc., within the city. In many instances when such calls are received the agents of the company are not advised whether a messenger is desired to bring to the office a telegraph message or to carry a private note or package to some other person in Portland. When a sufficient number of messengers are not in attendance at the company's office properly to transact the telegraphic business, a messenger is refused when called for any other purpose. When, however, messengers are available, they are sent in response to calls of every kind, and without information as to the service required. Upon receiving a call the company's agent directs a messenger to go to the locality indicated, where he is instructed as to the place and manner of delivering a message or package, and thereupon the boy executes the order, performing the service required. Neither the company nor its agent is usually informed as to the contents or value of the package delivered or the importance of the message handed over to a messenger other than a telegraphic communication. In answering a call the messenger informs the patron what the charges will be for performing the service demanded, and in most instances the boy collects the prescribed fee, which is calculated upon the basis of 40 cents per hour for deliveries made to persons within the city. Such fee, when thus received, is given to the company's agent, who retains it, keeping account thereof, and at the end of the month he pays the messenger who performed the service 60 per cent of the sums so received and also gives the boy 2 cents for each telegram he has delivered during that time. Credit is sometimes allowed for the fee required for delivering

notes, packages, etc. No license has been issued to the defendants, nor has any bond been given by either of them as required by the ordinance.

1, 2. No claim is made by defendants' counsel that the charter of Portland did not empower the council of that municipality to regulate occupations and kindred matters within the city. It will be assumed, therefore, that such authority is expressly given or is granted by necessary implication. The power to regulate does not authorize an absolute prohibition of any legitimate business that may be pursued as of common right. As a means of enforcing a reasonable regulation, however, power may be exercised to exact a license to follow a particular occupation, coupled with an accompanying prohibition that, in the event of a failure to pay the stipulated fee and to procure the requisite evidence of authority to conduct the business, pursuit thereof will be unlawful: Dillon, Mun. Corp. (5 ed.), § 665. A text-writer, in distinguishing between a tax and a license, observes:

"It is therefore conclusive that the general requirement of a license, for the pursuit of any business that is not dangerous to the public, can only be justified as an exercise of the power of taxation, or the requirement of a compensation for the enjoyment of a privilege or franchise": 1 Tiedeman, State and Federal Control, p. 495.

The production of a revenue, however, is not conclusive evidence of an exercise of the power to tax, for a municipal corporation may be authorized to issue licenses which incidentally result in raising revenue: Cooley, Con. Lim. (5 ed.), 244.

3, 4. As a reasonable exercise of a measure of the police power and as an incident to the authority to demand a license fee as a condition precedent to the

right to pursue an occupation in which members of the public may be interested or whereby they may be affected, a municipal corporation, under a grant of power to regulate, may also lawfully require the licensee to execute to the city a reasonable bond for the faithful performance of the service authorized and to operate as indemnity for damages which individuals may sustain by reason of fraudulent conduct of the business: Freund, Police Power, § 40; *State* v. *Harrington,* 68 Vt. 622 (35 Atl. 515, 34 L. R. A. 100). The ordinance in question is reasonable in its terms, general in its application to all parties of the same class, consonant with the powers and purposes of the City of Portland, consistent with the laws and policy of the state, and is a proper exercise of the police power enacted for the purpose of regulating and not restraining occupations: *Ex parte Frank,* 52 Cal. 606.

5. It is contended that the messenger business, disclosed by the stipulated facts, as far as it relates to the delivery of notes, packages, etc., is not conducted by the Western Union Telegraph Company; that its undertaking in this particular is to furnish messengers to its patrons, whose servants they are for the time employed; that the company's full duty is discharged when it exercises ordinary care in selecting the messengers, and hence an error was committed in rendering the judgment herein. "One who employs messengers to deliver parcels," says a text-writer, "is a common carrier as to goods received for delivery in that way": 6 Cyc. 369. "A common carrier," observes Mr. Justice LORD, in *Thompson-Houston Co.* v. *Simon,* 20 Or. 60, 63 (25 Pac. 147, 23 Am. St. Rep. 86, 10 L. R. A. 251), "is such because his duties partake of a public character." In *White* v. *Postal Telegraph Co.,* 25 App. D. C. 364, 367 (4 Ann. Cas. 767), which was

an action to recover money alleged to have been lost by a messenger furnished by the defendant to the plaintiff, the court, referring to such business, remarked:

"In passing, it may be said that in all the larger cities there are now companies engaged in this line of service, and undoubtedly they are in a certain sense and to a certain extent common carriers."

In *Gilman* v. *Postal Telegraph Co.,* 48 Misc. Rep. 372, 373 (95 N. Y. Supp. 564, 565), the court, in speaking of the defendant, makes the following assertion:

"It is in evidence, however, that it installs callboxes in houses, and sends messenger boys, in response to calls, to carry out such errands as may be intrusted to them, and that this service frequently involves, to the knowledge of the company, the carrying of parcels. So far as appears, this service is confined to the carrying of such small parcels as can be carried by hand by a lad, and it does not appear that the defendant is equipped or prepared to carry more bulky merchandise. To the extent, then, that it offers its services to the public as a carrier—that is, so far as relates to small packages—the defendant must, I think, be regarded as a common carrier and held to be responsible in that capacity."

It is evident, we think, from the agreed statement of facts, that the Western Union Telegraph Company, in the exercise of a part of its public employment, holds itself out as ready to engage in carrying from place to place as directed, within the City of Portland, notes, small packages, etc., undertaking to perform such service for hire as a business, furnishing messengers at all times, except when they are otherwise engaged in delivering telegraph messages, and, in respect to such packages as can reasonably be transported by messengers, it is a common carrier and ordinarily liable to

the obligations imposed by the principles of the common law upon such class of public service corporations.

It remains to be seen whether or not the messengers of the Western Union Telegraph Company when engaged in delivering notes, packages, etc., in response to calls are its servants or *pro hac vice* are the employees of its patrons. In *Haskell* v. *Boston District Messenger Co.,* 190 Mass. 189 (76 N. E. 215, 112 Am. St. Rep. 324, 5 Ann. Cas. 796, 2 L. R. A. (N. S.) 1091), the plaintiff by means of a call-box signaled the defendant for a messenger, upon whose arrival there was delivered to him a receipted bill for rent, amounting to $58.33, and he was sent to collect that sum from a tenant. The messenger received the money but failed to return it, whereupon an action was instituted to recover it; and it was held that a corporation supplying messenger boys to be employed in ordinary messenger service and controlled by those calling for them was not a common carrier, and that it performed its duty toward its customers by exercising ordinary care in the selection and employment of suitable persons as messengers, and, no special agreement having been made with the company in regard to the performance of such service, the patron, as the employer of the boy, could not recover the loss from the corporation supplying him, without showing negligence on its part in selecting the boy as a messenger.

So, too, in *Hirsch* v. *American District Telegraph Co.,* 112 App. Div. 265 (98 N. Y. Supp. 371), a staff of messengers was maintained by the defendant corporation, which furnished boys to its patrons needing their services, the charges therefor being based upon the time employed. The plaintiff notified the defendant's manager of one of its offices that he needed a boy and

accepted the lad offered, to whom he gave a package with instructions to take it to a designated place and deliver it. The package was never delivered, and, in an action to recover the value thereof, it was ruled that in furnishing such boy the company was not a common carrier, and that no contract had been entered into between the plaintiff and the defendant so as to render it liable for the failure of the boy to deliver the package.

We do not assent to the doctrine announced in these cases that a company, which for the purpose of dispatching a part of its business maintains messengers whom it sends out upon call to its patrons, is not in any sense a common carrier. Whether or not, without a statute or an ordinance imposing a duty upon such company to secure a license and to execute a bond to indemnify its patrons, a recovery can be had for a loss occasioned by the failure of its messengers safely to deliver notes, packages, etc., received by him, is not necessary to inquire. The ordinance involved permits persons, firms and corporations engaged in delivering messages or merchandise as a part of their business to pursue their respective occupations without the necessity of procuring a license or being obliged to execute a bond. Pursuant to such provision of the municipal law, the Western Union Telegraph Company could undoubtedly deliver to its patrons in the City of·Portland telegraphic messages received over its wires. If the company either directly or indirectly engage in the delivery of notes, packages, etc., for others, it must first secure a license and execute the bond required. The object of the enactment was to impose that duty.

The installation of call-boxes in offices and places of business for the accommodation of its patrons, the

collection of the fee for the messenger service, and the retention of 40 per cent thereof, the advertisements that were issued to secure patronage, show that the company evidently obtained a very fair share of the compensation paid for the service rendered.

6. This being in the nature of a criminal action, the evidence must prove a violation of the provisions of the ordinance by a preponderance only, and such proof need not be direct. It may consist of a reasonable inference which the trial court was authorized to deduce from a consideration of the entire circumstances developed by the stipulated facts. When viewed in this light, it is believed that the company, notwithstanding its published disclaimer, undertook the delivery of packages, notes, etc., for hire; and, such being the case, the judgment should be affirmed, and it is so ordered.                                        AFFIRMED.

MR. JUSTICE BURNETT, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.