FRANK K. STURGIS and Others, Composing the Firm of STRONG, STURGIS & Co., Respondents, v. AMERICAN DISTRICT TELEGRAPH COMPANY, Appellant.

First Department, December 15, 1922.

Master and servant — action to recover value of bonds stolen by messenger, furnished by defendant to plaintiff by hour, to whom they were intrusted for delivery to third persons — defendant did not have knowledge that messenger was being used to transfer bonds — defendant not liable.

A corporation, engaged in the business of furnishing messengers at the rate of thirty cents per hour to deliver packages for customers, which was not incorporated as a common carrier, is not liable for the value of negotiable bonds stolen by a messenger to whom they were intrusted by a customer for delivery to third persons where there was no contract fixing the corporation's liability and where the corporation did not have any knowledge of the fact that the bonds were to be intrusted to the messenger for delivery.

While the corporation owed a duty to its customers to make a reasonable investigation of the qualifications of its messengers and for failure to perform that duty it would be liable to any customer for the loss of an ordinary package, the contract and duty of the corporation did not make it liable for loss of property of special value without specific notice that that property was to be intrusted to the messenger to carry.

DOWLING and PAGE, JJ., dissent.

APPEAL by the defendant, American District Telegraph Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 6th day of January, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 23d day of January, 1922, denying defendant's motion for a new trial made upon the minutes.

*Charles T. Russell* [*Arnold W. Sherman* of counsel] for the appellant.

*Blackwell Bros.* [*George E. Blackwell* of counsel], for the respondents.

SMITH, J.:

The plaintiffs are brokers. They wanted a messenger to carry stocks and bonds from their house to other brokers. They had in their office a call box of the defendant, but, instead of using that call box, for some reason unexplained they went out into the hall of their building and saw the Western Union operator and told her they wanted a messenger, a bond and stock runner, which apparently meant a messenger to carry bonds and stocks. The Western Union is not shown to have had any financial interest in the defend-

ant company, so that this Western Union operator cannot be deemed to be the servant of the defendant. She had no telephone by which she could telephone the information as to the purpose for which this messenger was wanted. She had in her booth a call box the same as the one that the plaintiffs had, and she simply called a messenger and sent him into the plaintiffs' brokerage house. This messenger did well that day, was asked to come back the next day, and was there for several days. He finally was given $10,000 in Liberty bonds to take to another broker, and also some stock. Nothing more was heard from him at the time, the stock being received the next day through the mail, but the bonds he appropriated.

In *Hirsch* v. *American District Telegraph Co.* (112 App. Div. 265) it was held that " an incorporated telegraph company maintaining lines in a city by which to communicate with police stations, and which, in addition, maintains a staff of messenger boys which it furnishes to its patrons at a charge based upon the time employed, but which is not incorporated to carry or deliver property, and does not assume to do so, is not a common carrier, and is not liable as such for money intrusted to a messenger and stolen by him." Further it was held: " Under a complaint alleging an express contract by such company to carry and deliver an envelope containing money, there can be a recovery only when such express contract is established, and a recovery cannot be based upon the theory that the defendant is liable for the misfeasance or malfeasance of the messenger." Further it was held that "An express contract to carry is not established by mere evidence that the defendant's manager was told of the contents of the envelope, when it is shown that the owner of the money never delivered the envelope to the manager, but after refusing several messengers selected one and delivered the envelope to him in the presence of the manager, and personally gave directions to the messenger as to the carriage and delivery of the envelope."

In that case, while the messenger was selected by the person for whom the money was carried, he was selected from among the messengers in the employ of the defendant's company. The fact in this case that the messenger service was paid for at the uniform rate of thirty cents an hour seems to me clearly to establish that it was not intended by the defendant to assume liability for the conversion of stocks and bonds and moneys delivered to a messenger boy. If any such liability had been intended to be assumed, it seems very clear that a greater compensation would be asked, a compensation commensurate with the responsibility which the defendant was undertaking for the conversion by its servant.

The defendant was not incorporated as a common carrier. The defendant had no notice, as far as the proof shows, of the nature of the service which was being required by the plaintiffs. Upon some of the messenger's certificates, which were returned the morning after, appears the word " stock." It is not shown who put it there or the time when it was put there. There is no sufficient evidence to show that the defendant had knowledge of the fact that this messenger was being used to transfer stocks and bonds and moneys from one place to another in the city, or to adjoining places. There is some evidence of one of the plaintiffs that there were messengers known as stock and bond messengers. It is clear, however, that no extra charge was made for this class of service, although it involved much larger responsibility; and the fact that no extra charge was made for any special service in regard to the packages carried would seem to indicate that there was no intention on the part of the defendant to become responsible for the default of the messenger, and that such was the understanding of the plaintiffs. Without notice to the defendant, however, of the nature of the service that was to be required by the plaintiffs, the defendant cannot be deemed to have contracted to carry safely the Liberty bonds which were afterwards converted by the messenger. Even if the word " stock " should be shown to have been written upon this certificate by the defendant, it would contain no indication of any service required in the transfer of bonds or money more easily negotiable than ordinary packages which may be intrusted to the messenger to deliver. I have no doubt that the company owes a duty to make a reasonable investigation of the qualifications of its messengers. (*Haskell* v. *Boston District Messenger Co.,* 190 Mass. 189, 193.) For failure to perform that duty the defendant would be liable to any one for the loss of an ordinary package. The contract of the defendant, however, and the duty of the defendant do not make it liable for loss of property of special value, without specific notice that that property is to be intrusted to the messenger boy to carry.

There are several rulings of the trial court, of which complaint is made, which would require at least a reversal and a new trial of this action. The charge of the court as to the duty of the defendant in looking up the criminal record of this messenger and as to the indictments, or rather, the refusal to charge as requested, places the defendant before the jury as having failed to look up the criminal record of a man who went by another name, which fact was unknown to the defendant. The refusal to charge that this girl at the Western Union office was not the agent of the defendant was clearly error, for which a new trial should be granted. Attention to the implied

contract made for this special service is noted specifically, because this holding calls not only for a reversal, but for a dismissal of the complaint.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., and GREENBAUM, J., concur; DOWLING and PAGE, JJ., dissent.

Judgment and order reversed, with costs, and complaint dismissed, with costs.