CITY OF NEWNAN *et al. v.* ATLANTA LAUNDRIES INC. *et al.*

No. 8632.   JANUARY 12, 1932.

*Hall & Jones* and *A. H. Freeman,* for plaintiffs in error.

*Herbert J. Haas, Lovejoy & Mayer, Joseph F. Haas,* and *Bertram S. Boley,* contra.

GILBERT, J.   Atlanta Laundries Inc. filed a petition seeking an injunction against the City of Newnan.  It appears from the allegations in the petition that the complainant is a corporation with its principal office in Delaware, but that its place of doing business is in the City of Atlanta.   The character of its business is that of laundering, cleaning, dyeing, pressing, and doing such other things as are incident to that character of business.   The petitioner applied to the municipal authorities of Newnan for a license to carry on its business there.   The application was returned by Mrs. L. P. Williams (official status, if any, not appearing), with the statement that the city clerk was absent, being "confined to the Piedmont hospital, Atlanta, Ga.," that she was "keeping the office for him, and would prefer that you defer application for license until he returns."   The letter also stated:  "I can not accept the check you tender in settlement of the license, for the reason that you have not tendered the correct amount and you have not filed an application for the license as required under the ordinance regulating the same." The Laundry Company then made similar application to the mayor of the City of Newnan, who returned the check for $100, tendered to cover license for laundry and dry-cleaning business in the City of Newnan.   The mayor also called attention to the fact that the application for license was not submitted in accordance with the terms of the city ordinance.   Apparently nothing further was done by the Laundry Company with reference to securing license.   Subsequently, on May 18, Deck, an agent of the Laundry Company, residing at Newnan, who had been soliciting business of the character done by petitioner within the municipality, was arrested by the chief of police, charged with violating the ordinance of the City

of Newnan, which required all persons doing laundry business to obtain a license according to the municipal ordinance. The schedule of fees fixed by the ordinance are: "Laundry and/or, laundry agents, using one motor-driven vehicle, when the work is done in the City of Newnan, $50. Where the laundry work or substantially all the laundry work is done without the limits of the City of Newnan, $300." Like fees are fixed in the case of those engaging in the business of dry-cleaning, dyeing, and pressing. Payment of $600, the amount required by the ordinance of those engaging in the business of laundering and that of dry-cleaning, dyeing, and pressing "where the . . work or substantially all the . . work is done without the limits of the City of Newnan," was demanded of Deck.

Before trial of the case against Deck, Atlanta Laundries Inc. filed a petition for injunction against the mayor and aldermen of the City of Newnan, the chief of police and city clerk, alleging that the arrest was unlawful, because the ordinance was null and void, being in contravention of stated clauses of the State and Federal constitutions. The ordinance requires all persons who engage in the City of Newnan in the business of laundering, dry-cleaning, dyeing, and pressing, or agents of either kind of business, to procure a license; that the application for such license shall name "the place where the business to be conducted, if in said. city, will be located, and, if a non-resident, naming the town and county where the principal office of the company is located," and "shall also set out a schedule of charges to be made for the work proposed to be done in said City of Newnan or for residents of said City of Newnan; and if the applicant, whether principal or agent, resident or non-resident, owns, controls, operates, carries on, and/or engages in said business in more than one locality, within a radius of seventy-five (75) miles of the City of Newnan, the said applicant shall set out a schedule of charges for work similar in kind to that proposed to be carried on in the City of Newnan that is charged in each said locality wherein said applicant as principal or agent owns, controls, and operates, carries on, and/or engages in the business the applicant intends to carry on in said City of Newnan," and in this connection the ordinance provides that the city clerk shall, from an inspection of such schedule of charges, "determine whether the applicant intends to engage in unfair competition in the

said City of Newnan with any person, firm, or corporation licensed or who may be licensed to engage in such business in said city," and issue or decline to issue the license according to whether the question is determined in the negative or affirmative. Another provision of the ordinance is that "It shall be the duty of every person, firm, or corporation engaged in or carrying on any of the aforesaid businesses in the City of Newnan, who removes or causes to be removed from the City of Newnan any article belonging to residents of the City of Newnan for the purpose of having the said article laundered, cleaned, or dyed, before engaging in business in the said City of Newnan or before removing any article belonging to residents of said city from the said City of Newnan, shall be required to file with the clerk of the City of Newnan a bond in the sum of" two thousand dollars. No question is here raised as to the amount of the bond.

■ The first headnote does not require elaboration.

■ That portion of the ordinance which requires the applicant for a laundry license to give a bond, where articles are taken from the city for the purpose of laundering, is not arbitrary and unreasonable and is not in conflict with the due-process clause of the State constitution or the fourteenth amendment to the constitution of the United States. It is important to bear in mind the precise terms of the ordinance on this question, because it will thus be shown that the bond is required of all persons who wish to engage in that business in the City of Newnan, provided the work is done outside of the city (see statement preceding). The person or corporation engaged in the business may be domiciled or resident within or without the city, but the classification with respect to the giving of bond applies where the work is done without the city. Therefore it is a classification of the business, and not according to residence of the person. It is a classification based upon the manner of carrying on a business; that is, by receiving the articles in Newnan and taking them without the city for laundering. It is a regulatory provision, and the question is whether it is a reasonable regulation or arbitrary and unreasonable. If the former, it is valid and constitutional; if the latter, it is invalid. In the annotation following the report of the case of People v. Beakes Dairy Co., in 3 A. L. R. 1260 (222 N. Y. 416, 119 N. E. 115), will be found the following clear statement of the law: "Since the State

or a municipality may regulate any business, however lawful in itself, which may be so conducted as to become the medium of fraud and dishonesty, a requirement of a bond to insure creditors of the business against financial loss is a valid enactment, and is not class legislation, if the requirement is based on reasonable grounds and is not essentially arbitrary. Hawthorn v. People, (1883), 109 Ill. 302, 50 Am. Rep. 610; State ex rel. Brewster v. Mohler (1916), 98 Kan. 465, 158 Pac. 408; aff. 248 U. S. 112, 63 L. ed. 153, 39 Sup. Ct. Rep. 32; State ex rel. Beek v. Wagener (1899), 77 Minn. 483, 46 L. R. A. 442, 77 Am. St. Rep. 681, 80 N. W. 633, 778, 1134; Portland v. Western U. Tel. Co. (1915), 75 Or. 37, L. R. A. 1915D, 260, 146 Pac. 148; Ferguson-Hendrix Co. v. Fidelity & D. Co. (1914), 79 Wash. 528, 140 Pac. 700; State v. Bowen & Co. (1915), 86 Wash. 23, 149 Pac. 330, Ann. Cas. 1917B, 625."

The annotator follows this statement with a general discussion of the authorities cited. Particularly to be noted is what is there said with reference to the decisions of the Supreme Court of the State of Michigan, because counsel for the defendants cite, as authority for their contention on this question, Harrigan & Reid Co. v. Burton, 224 Mich. 564 (195 N. W. 60, 33 A. L. R. 142, 145). In their brief they quote from that case. Such quotation shows that the decision therein rendered was based upon another Michigan case, Valentine v. Berrien, 124 Mich. 664 (50 L. R. A. 493, 83 Am. St. R. 352, 83 N. W. 594). In the annotation to the Beakes case, decided by the Court of Appeals of New York, appears a citation of Brewster v. Mohler, 98 Kan. 465 (supra), which was affirmed by the Supreme Court, 248 U. S. 112. The Kansas Supreme Court, referring to the Valentine case, which furnished authority for the later Harrigan case in the Michigan Supreme Court, said as follows: "Whatever that great court says is always read and studied with great profit; but curiously enough, in that case, the particular clause or clauses of the constitution, State or Federal, which the statute was held to infringe, are not cited nor even hinted at. The case does not cite a single precedent of any sort; and it neither persuades nor convinces, as do the decisions of the Supreme Courts of Minnesota, Illinois, and Washington on this subject." The decision in Brewster v. Mohler, having been affirmed by the Supreme Court, furnishes us authority on that ques-

tion by the supreme authority on all Federal questions. "There are always difficulties in drawing the dividing line between that which is within, and that which is without, the constitutional power of the States; and the question in each specific case must be answered by the pertinent facts therein." Engel v. O'Malley, 219 U. S. 128 (31 Sup. Ct. 190, 55 L. ed. 128).

■ That portion of the ordinance which requires a schedule of prices to be filed as a condition precedent to the issuance of a license is not in conflict with art. 1, sec. 1, par. 3, of the State constitution (Civil Code (1910), § 6359), or with the fourteenth amendment to the constitution of the United States. Where a statute or an ordinance is capable of two constructions, constitutional under one construction and unconstitutional under the other, it is the duty of the court to adopt that construction which will sustain its constitutionality. The City of Newnan contends that the portion of the ordinance in question is not for the purpose of price-fixing, but is a means of judging, as a condition precedent to the issuance of the license, whether the applicant is undertaking to engage in unfair competition. The petitioner contends that it is really the means of fixing prices. The proper construction is that it is not price-fixing, and therefore not unconstitutional. Construed as a means of preventing unfair competition or carrying on the business in a manner harmful to the public interests and general welfare, the statute becomes merely regulatory in character. The State, or a municipality under authority of the State, may regulate a business, however honest in itself it may be, if the business as conducted may amount to a fraud or be harmful to the public interests because of unfair competition. "It is not enough to say that the business may be honestly conducted. The State may, to some extent, compel honesty by imposing a license fee, if widespread frauds upon and losses by its people are thereby prevented. Any trade, calling, or occupation may be reasonably regulated if 'the general nature of the business is such that, unless regulated, many persons may be exposed to misfortunes against which the legislature can properly protect them.'" People v. Beakes Dairy Co., supra, and cit. In that case the opinion cites numerous authorities. Some of them deal with the constitutionality of some features of blue-sky laws; others, where licenses have been required of employment agencies, the business of banking by individuals and

partnerships; such statutes being upheld "because fraud could be practiced in it." Other businesses dealt with are the selling of patent-rights, the standardization of "ice cream," etc. The annotations following the case deal exhaustively with the subject, concluding with the power to require bonds. The same principle with respect to protecting the character of the business to be conducted was ruled by this court in *Saunders* v. *State*, 172 *Ga.* 770 (8), 773 (158 S. E. 791), and by the Supreme Court of the United States in Payne *v*. Kansas, 248 U. S. 112 (supra), Hall *v*. Geiger-Jones Co. 242 U. S. at p. 539 (37 Sup. Ct. 217, 61 L. ed, 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643).

If the ordinance should at any time be so administered, as the Laundry Company contends that its terms authorize, as to become a means of price-fixing, such construction of the ordinance would result in its invalidity, and persons injured thereby would be entitled to injunction. In Central Lumber Co. *v*. South Dakota, 226 U. S. 157 (33 Sup. Ct. 66, 57 L. ed. 164), a unanimous decision, the Supreme Court upheld the statute of South Dakota which undertook to penalize those engaged in the manufacture, etc., of a commodity in general use, who undertook to destroy competition. In the opinion the court said: "We must assume that the legislature of South Dakota considered that people selling in two places made the prohibited use of their opportunities, and that such use was harmful, although the usual efforts of competitors were desired. It might have been argued to the legislature, with more force than it can be to us, that recoupment in one place of losses in another is merely an instance of financial ability to compete. If the legislature thought that that particular manifestation of ability usually came from great corporations whose power it deemed excessive and for that reason did more harm than good in their State, and that there was no other case of frequent occurrence where the same could be said, we cannot review their economics or their facts. That the law embodies a widespread conviction appears from the decisions in other States. State *v*. Drayton, 82 Nebraska, 254 [117 N. W. 768, 23 L. R. A. (N. S.) 1287, 130 Am. St. R. 671]; State *v*. Standard Oil Co., 111 Minnesota, 85, 126 N. W. Rep. 527; State *v*. Fairmont Creamery, 153 Iowa, 702, 133 N. W. Rep. 895 [42 L. R. A. (N. S.) 821]; State *v*. Bridgeman & Russell Co., 117 Minnesota, 186, 134 N. W. Rep. 496

[Ann. Cas. 1913D, 41]." An additional basis for the right of the city to require a schedule of prices to be charged to accompany the application for license is that by such means the city will be furnished information of importance in arriving at what is a just and reasonable license tax. In former times it was required of millers, operators of ferries, and doubtless a number of other characters of business. The following cases cited by defendant in error are distinguished, because the facts were different from the facts of this case: Tyson v. Banton, 273 U. S. 418 (47 Sup. Ct. 426, 71 L. ed. 718, 58 A. L. R. 1236) ; Fairmont Creamery Co. v. Minnesota, 274 U. S. 1 (47 Sup. Ct. 506, 71 L. ed. 893, 52 A. L. R. 163; Southwest Utility Ice Co. v. Liebman, 52 Fed. (2d) 349.

■ The charter of the City of Newnan, granted by the State (Ga. Laws 1893, p. 270, sec. 1), contains the usual general welfare clause found in nearly all municipal charters. Power in this instance is granted to the mayor and board of aldermen to enact such ordinances for the welfare and proper government of the city as to the mayor and said board may seem best, and which shall be consistent with the laws of the State of Georgia and of the United States. Section 17 of that act, which gave specific authority to the city to require license fees for the conduct of designated businesses, was amended by the act of 1925 (Ga. L. 1925, p. 1302). That section, as amended, grants power and authority to the city to *license, regulate, control, or prohibit* numerous designated kinds of business, "and all other establishments, business callings or vocations, and which under the laws and constitution of this State are subject to license," so that the charter of the City of Newnan contains specific authority to license, regulate, and control the business falling within the purview of the ordinance, provided, of course, the ordinance is construed as indicated in this decision. The ordinance in question, as now construed with reference to the filing of bond and also schedule of charges, is authorized by the powers granted in the charter. Laundries fall within what is called police power for purposes of regulation and control. 12 C. J. 924, § 432. The control must be reasonable and not arbitrary. There must be no discrimination among all within the same lawful classification, but the manner of doing business may be controlled according to the general welfare, provided such control is not oppres-

sive. In Barbier *v.* Connolly, 113 U. S. 27 (5 Sup. Ct. 357, 28 L. ed. 923), it was held that an ordinance prohibiting from washing and ironing in public laundries and wash-houses within defined territorial limits, from ten o'clock at night to six in the morning, is a purely police regulation, within the competency of a municipality possessed of the ordinary powers. In Soon Hing *v.* Crowley, 113 U. S. 703, 709 (5 Sup. Ct. 730, 28 L. ed. 1145), the Supreme Court held: "The decision in Barbier *v.* Connolly, ante, 27—that a municipal ordinance prohibiting from washing and ironing in public laundries and wash-houses within defined territorial limits, from ten o'clock at night to six in the morning, is a police regulation within the competency of a municipality possessed of ordinary powers—affirmed. It is no objection to a municipal ordinance prohibiting one kind of business within certain hours, that it permits other and different kinds of business to be done within those hours. Municipal restrictions imposed upon one class of persons engaged in a particular business, which are not imposed upon others engaged in the same business and under like conditions, impair the equal right which all can claim in the enforcement of the laws. . . .The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the *same conditions.* [Italics ours.] It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws."

The last five headnotes do not require elaboration. The judgment is affirmed, with direction that it be modified to the extent that the city shall not be enjoined from enforcing the ordinance in question, with the single exception that the petitioner shall not be required to pay the arbitrary and excessive sum of $600 special license fee.

*Judgment affirmed, with direction. All the Justices concur, except*

GILBERT, J., dissenting. It is a general principle of equity, applied universally, that a court of equity will take no part in the administration of the criminal law. This court so ruled in the early case of *Gault* v. *Wallis,* 53 *Ga.* 675, and, among many, the following: *Phillips* v. *Stone Mountain,* 61 *Ga.* 387; *Garrison* v. *Atlanta,* 68 *Ga.* 64; *City of Atlanta* v. *Gate City Gas Light Co.,*

71 *Ga.* 106; *Paulk* v. *Sycamore,* 104 *Ga.* 24 (30 S. E. 417, 41 L. R. A. 772, 69 Am. St. R. 128); *City of Bainbridge* v. *Reynolds,* 111 *Ga.* 758 (36 S. E. 935); *Salter* v. *Columbus,* 125 *Ga.* 96 (54 S. E. 74); *Mayor &c. of Jonesboro* v. *Central of Ga. Ry. Co.,* 134 *Ga.* 190 (67 S. E. 716); *Hughes* v. *State Board of Medical Examiners,* 158 *Ga.* 602 (123 S. E. 879).

The case of *City of Atlanta* v. *Gate City Gas Light Co.,* supra, is cited for the plaintiff. A reference to that case will show that the gas company had been chartered by the General Assembly. The terms of its charter were such that the City of Atlanta had no control over it, except in the general control of its streets, where the gas pipes were to be laid. The company filed a petition in equity, praying for mandamus and for injunction. Before the argument the prayer for mandamus was stricken. The only remaining prayer was for an injunction to prevent the city from interfering with or arresting the servants and employees of the company in excavating said streets and the laying down of pipes. It will be seen from the actual judgment rendered on interlocutory hearing, at page 116, that the City of Atlanta was "enjoined from obstructing or in any manner preventing the complainant, its agents and employees, from distributing and burying in the streets, lanes, and public alleys in the City of Atlanta . . its gas mains and other pipes for the distribution of its gas, by instituting, commanding, counseling, advising, or procuring prosecutions or arrests to be made of any of the complainant's employees for so exercising its rights under its charter. *This order is not intended, and shall not be construed, to prevent the proper ministerial officers of said city from making any arrest of any person for any violation of any city ordinance, or from making a case against any such person, or to prevent the proper judicial officer from trying any such person, but is intended only to secure to complainant the exercise of its rights under its charter, by restraining the mayor and general council from carrying out the policy towards complainant and its employees, plainly indicated in the action of the general council and the letter of the mayor set out in the bill, of using their influence and power towards a prevention of the exercise of those rights by complainant.*" [Italics mine.] The judgment makes clear that the criminal proceedings instituted by the city were not enjoined. In *Pope* v. *Savannah,* 74 *Ga.* 365, the principle was again

laid down so clearly that the codifiers took from that decision the provisions now found in the Civil Code of 1910, § 5491, as follows: "A court of equity will take no part in the administration of the criminal law. It will neither aid criminal courts in the exercise of their jurisdiction, nor will it restrain nor obstruct them." The facts of that case make the proposition all the more clear that a court of equity will not interfere with the administration of the criminal law, even though some rights with reference to property may be involved. The Code has been enacted into law, and all of its provisions have the force and effect of a statute. Whatever doubt there may have been as to the decision in the *Gate City Gas Company* case, since that judgment was rendered the *Pope* case has been decided and its provisions have become the statutory law by legislative enactment. The case of *Paulk* v. *Sycamore*, supra, is direct authority for the view stated above. While one Justice was absent, there was no dissent in that case; and moreover, it was subsequently cited and approved in *City of Bainbridge* v. *Reynolds*, supra, in which all the Justices concurred. Incidentally it may be noted that in the case last mentioned, the suit was brought by Reynolds, a resident of Bainbridge and the agent in that city of a nonresident steam laundry, who prayed for an injunction to prevent the municipal corporation from enforcing or attempting to enforce an ordinance which required the agents or representatives of nonresident steam laundries to pay a special license fee of $100. He alleged that the ordinance was unconstitutional, null and void; that it was violative of both the constitution of this State and the constitution of the United States; that the city had no authority, under its charter, to enact the same, and that it was unreasonable. This court, speaking through Mr. Justice Fish, all the Justices concurring, held that a court of equity will not by injunction prevent the institution of a prosecution for the violation of the statute therein involved.

In *Salter* v. *Columbus*, supra, a resident of the State of Alabama brought suit for injunction against the City of Columbus, to prevent prosecution for doing business without a license. The petition alleged that the mayor and police of the city threatened to arrest the drivers of delivery-wagons whenever they attempted to deliver their commodities to persons within the city without paying the tax. This court held, all the Justices concurring, that equity

would not enjoin the institution of prosecutions in such a case. *Paulk v. Sycamore* and *Bainbridge v. Reynolds,* supra, were cited. In the opinion Mr. Justice Beck said, with reference to *Paulk* v. *Sycamore*: "Mr. Justice Fish, now Chief Justice, in a well-considered opinion, supported by reason and authority, reached the conclusion that courts of equity will not enjoin or prevent the institution of prosecutions for violations of penal·municipal ordinances, nor inquire into the validity or reasonableness of ordinances making criminal the acts for the doing of which prosecutions are threatened. Hence, the ordinance here being purely penal in its character with reference to the means provided for its enforcement, ·the court below could not have rightfully inquired into its fairness or validity, or determined whether or not the petitioners, whose place of business was without the State, have laid themselves liable to be taxed by the City of Columbus by selling and delivering their goods within its corporate bounds." In the present case the means of enforcing the Newnan ordinance is merely penal, and therefore the *Salter* case is direct authority and, being an unanimous case, is binding in the present instance.

In *City Council of Augusta* v. *Congdon,* 171 *Ga.* 572· (156 S. E. 212), this court, in a unanimous decision, said: "Courts of equity will not by injunction prevent the institution of prosecutions for criminal offenses, whether the same be violations of State statutes or municipal ordinances; nor will they, upon a petition for an injunction of this nature, inquire into the validity or reasonableness of an ordinance making penal the act or acts for the doing of which prosecutions are threatened. It appears from the statement of facts in that case that the City of Augusta refused to deliver or to issue a permit to drive an automobile as required by municipal ordinance, and "advised him that unless he paid said illegal tax he would be summarily arrested and brought before the recorder of the city, if he undertook to drive his said motor-vehicle. The City Council of Augusta is threatening to arrest him, and all of the persons operating motor-vehicles in that city, who refuse to pay said tax of 50 cents." This court further held: "The case does not fall within the exception to the above general rule, that a court of equity will enjoin an unfounded prosecution for an alleged crime, and the threatened prosecution therefor, unless the person desists from doing the acts complained of, where the effect of such prose-

cution will injure or destroy the property of the person so prosecuted, or deprive him of the legitimate enjoyment of his property or property rights, or prevent him from pursuing his occupation or profession."

This court has held that equity will not inquire into the constitutionality of a legislative act or the validity or reasonableness of an ordinance making penal the acts for which prosecution is threatened. *Paulk* v. *Sycamore,* supra; *Bainbridge* v. *Reynolds,* supra; *Jones* v. *Carlton,* 146 *Ga.* 1 (90 S. E. 278); *Volunteers of America* v. *Atlanta,* 152 *Ga.* 461 (110 S. E. 282). The three cases last cited were concurred in by six Justices. Nor will equity assume jurisdiction merely to prevent a multiplicity of suits or repeated arrests. *Georgia Ry. &c. Co.* v. *Oakland City,* 129 *Ga.* 576 (59 S. E. 296). One Justice did not participate in that case, but there was no dissent. On the same day, however, that the judgment was rendered in that case the court decided *White* v. *Tifton,* 129 *Ga.* 582 (59 S. E. 299), laying down the same rule, citing both *Paulk* v. *Sycamore* and *Georgia Ry. &c. Co.* v. *Oakland City,* supra, in which all the Justices concurred. *White* v. *Tifton* involved a constitutional question, and also the property right of carrying on a lawful business. In *Mayor &c. of Shellman* v. *Saxon,* 134 *Ga.* 29 (67 S. E. 438, 27 L. R. A. (N. S.) 452), a "full-bench" decision, the case of *Georgia Ry. &c. Co.* v. *Oakland City,* 129 *Ga.* 576 (59 S. E. 296), was cited as authority. In the *Shellman* case Mr. Justice Lumpkin, speaking for the court, cited many authorities and held that the facts of the case brought it within the general rule, and not within one of the exceptions where a court exercising equitable powers will restrain criminal prosecutions under a municipal ordinance. The petitioner was carrying on a lawful business; he had obtained a license from the ordinary of the county to engage in such business; he alleged that repeated arrests would be made, and that the ordinance in effect placed a burden upon the business, seeking rather to prohibit than to regulate it; that he had been tried before the mayor under a charge based on each ordinance, had been convicted and had carried each case to the superior court by writ of certiorari; that interference with his business would result, if he continued to sell, thereby causing him irreparable damage. The court held that the case was within the general rule against equitable interference, and that "The question of the

validity of the ordinances under which the complainant was tried and convicted in the mayor's court, and from which judgments he carried the cases to the superior court by writs of certiorari, could be determined in those proceedings." In the opinion it was said: "In cases where courts of equity have granted injunctions against prosecutions under municipal ordinances, it will usually be found that this was ancillary to the exercise of some acknowledged equity jurisdiction for the protection of property or property rights against irreparable damage, resting upon grounds other than the mere harassment rising from prosecutions, though repeated."

The only property right involved in this case is the right to do business in Newnan, for which that city has demanded that petitioners pay a license fee. If it is essential to protection that equity assume jurisdiction by the exercise of the drastic extraordinary remedy of injunction rather than leave the question to the ordinary courts of law, where will the limit be fixed? If such is necessary here, it would be difficult to mention any case where a license is required that would not likewise authorize equity to interfere. And if mere arrest for doing business without a license is sufficient to authorize equitable interference, this court has wasted much of its valuable time since its creation, endeavoring to draw the proper line for its denial. If that is sufficient, equity would come to the aid of all, notwithstanding the statute (Code § 5491), unless the petitioner was entirely without business connection or the immediate prospect of such connection. I assume willingly my share of responsibility for conflicting decisions; but after all, the important duty is to decide correctly according to binding precedent. Supporting the ruling here made, I also refer to the following cases and the cases therein cited: *Mayor &c. of Moultrie* v. *Patterson,* 109 *Ga.* 370 (34 S. E. 600); *City of Marietta* v. *Brantley,* 170 *Ga.* 258 (3) (152 S. E. 232); *Roberts* v. *Atlanta,* 172 *Ga.* 652 (158 S. E. 413). The ordinance attacked in the present case provided for an appeal from the decision of the city clerk to the mayor and council. In this case there was no appeal. On receipt of a letter from some person returning the application, the applicant merely renewed the application to the mayor, as provided by the ordinance. An appeal should have been taken as provided by the ordinance; then the petitioners had an adequate remedy at law by certiorari from the decision of the mayor and council, under the Civil Code

(1910), § 5180, or by defending the case made by the arrest. Although the petition alleges that the municipality announced its intention to enforce the ordinance in all particulars, such announcement did not amount to a threat of doing anything unlawful. The officers of the City of Newnan, without such an announcement, were bound, under their oaths of office, to enforce all ordinances according to the law and the constitution. Such an announcement affords no basis for the intervention of a court of equity. *Cathcart v. Atlanta,* 169 *Ga.* 791 (151 S. E. 489).

Although there are allegations that "the attempted enforcement of said ordinance by the defendants and the continued arrests of the said B. E. Deck and other representatives of plaintiff under the said void and invalid ordinance deprive the plaintiffs of their property; will seriously hamper and interfere with the transaction of the business of the plaintiffs, will result in repeated criminal prosecutions under the said void ordinance, and will cause the plaintiffs irreparable damages in carrying on their business," these allegations merely amount to conclusions of the pleader. No facts are stated to authorize such conclusions. On the contrary, the inferences from the pleadings and the agreed facts conclusively disprove them. The municipality denies these allegations. Furthermore, the brief of the defendant in error, Laundries Inc., contains this statement: "The only manner in which defendants in error could raise the unconstitutionality of the terms of the ordinance was to violate said ordinance." That statement, in connection with the facts of the case, authorizes the inference that the Laundry Company proceeded to do business without a license, and purposely awaited an arrest, with the mistaken view that equity would then be an available remedy. The aid of equity was therefore sought, without permitting their agent to go to trial on the charge made; and thus it was sought to restrain the criminal prosecution.

For these reasons, and according to the authorities cited, this case comes within the general rule stated in the Civil Code (1910), § 5491. The petitioner has an adequate remedy at law, and for that reason equity will not take cognizance. § 4538. The court therefore erred in granting an interlocutory injunction.