SAUNDERS *v.* THE STATE.

No. 7989. May 12, 1931. Rehearing denied June 12, 1931.

*James C. Davis, J. N. Johnson, E. L. Tiller,* and *Branch & Howard,* for plaintiff in error.

*John A. Boykin, solicitor-general,* and *J. W. LeCraw,* contra.

Gilbert, J. Saunders was convicted of the offense of violating the Georgia securities law. The indictment was in two counts. The accused demurred on several grounds. The court sustained the demurrer as to the second count and overruled it as to the first count. The case proceeded to trial; and, on return of verdict of guilty and sentence, the accused filed a motion for new trial on the general grounds and eighty-three special grounds. The motion was overruled, and the exception in this court is to the overruling of the demurrers to the first count of the indictment and the judgment overruling the motion for a new trial.

1. Three grounds of the demurrer are (1) That the section of the act referred to, on which the indictment was based, as follows: "Section 36. Any issuer, dealer, broker, solicitor, agent or other person who shall sell or offer for sale any securities coming within Class 'D' as defined in this act, or real estate coming within its provisions, without having first secured a license so to do in accordance with the terms and provisions of this act, shall be guilty of a felony, and on conviction therefor shall be punished by imprisonment in the State penitentiary for not less than two years nor more than five years," as qualified by section 9, paragraph 1, of said act (Acts 1922, at p. 160) reading: "Securities in Class 'B' shall comprise: (1) Those sold by the owner or his representative for the owner's account, such sale being in the nature of an isolated transaction, and not made in the course of repeated and successive transactions of a similar nature by such owner, or by such representative, and such owner or representative not being the underwriter of such securities. . . Securities in Class 'B' when disposed of by the persons and in the manner provided by this section shall not be subject to the provisions of this act," is too uncertain, vague, and indefinite for criminal enforcement, no standard being provided by which the question when an owner of securities not the underwriter thereof had engaged in "repeated and successive transactions of a similar nature" can be determined. *Held:* The statute in question must be construed as if the word "issuer" were not contained in section 36. *Smith* v. *State,* 161 *Ga.* 103 (129 S. E. 766). The accused in this case was indicted as a "dealer," and not as an "owner" or "issuer." Therefore section 9, par. 1, of the act of 1922 (Ga. Laws 1922, p. 160), quoted above, has no application to the indictment against this accused. The act of 1922, section 9, refers to securities in Class "B," and refers to owners or their representatives. Whether or not this provision is void because of vagueness, indefiniteness, and uncertainty, can not prejudice the accused; therefore the court did not err in overruling the demurrers based upon these grounds.

2. Another ground of demurrer complains that the count of the indictment under which conviction was obtained "does not sufficiently set forth what securities were sold and offered for sale by defendant to L. D. Adams, said count of said indictment not alleging what said securities were, but alleging only that they

were 'styled by accused as follows: 150 shares of the common capital stock of the Intercity Radio Telegraph Company, a corporation under the laws of the State of Delaware.'" *Held:* The words, "styled by the accused as follows," to which the demurrer referred, do not appear in the indictment as it comes to this court. The brief of the plaintiff in error indicates that these words were stricken from the indictment by agreement. Therefore this ground of demurrer affords no ground for reversal.

3. Ground 13 of the demurrer is "that the acts charged to have been done by the accused in said first count do not constitute the commission of any offense for which accused may be convicted and punished under any valid existing law of this State." *Held:* This ground is too vague to raise any point for decision. A demurrer must in itself be perfect and point out wherein and why the law which it attacks is invalid.

4. Other grounds of demurrer contend that because the "issuers" of securities, included in the class legislated against are not included in the caption of the act of 1922, amending the Georgia securities law, section 36 thereof discriminates in favor of "issuers" in that they are not subjected to the penalties prescribed for dealers, brokers, solicitors, and agents, and that it therefore deprives defendant of the equal protection of law guaranteed by the Federal Constitution. *Held:* Conceding that the act of 1922 is unconstitutional as contended by plaintiff in error, the indictment would not be affected. The indictment is based upon the securities law previously enacted, and the case is not dependent upon the validity of the said act of 1922 in the respect as contended. Under the *Smith* case, supra, "issuers" are not subject to the penalties imposed under the "blue-sky law." This does not render the act, as applied to plaintiff in error, void because in conflict with the due-process clause of the Federal constitution. The State may constitutionally make reasonable classifications, and a classification which exempts owners but penalizes dealers in the sale of securities would be reasonable and not arbitrary.

5. Other grounds of demurrer contend that by the act in question the accused is deprived of the equal protection of law guaranteed by the Federal and State constitutions, because section 9, par. 1, of the act excepts from its provisions securities "sold by the owner or his representative for the owner's account, such sale

being in the nature of an isolated transaction, and not made in the course of repeated and successive transactions of a similar nature by such owner, or by such representative, and such owner or representative not being the underwriter of such securities," while section 36 of the act provides that any person who, without having procured a license therefor in accordance with the terms of the act, sells or offers for sale securities coming within class "D" shall be guilty of a felony, thus seeking to deny and deprive an owner of securities who is not the underwriter thereof of the right to dispose of same by sales in the course of repeated and· successive transactions of a similar nature; although such' an owner is permitted to sell for his own account in a single transaction. *Held:* The accused, as already stated, was indicted as a ."dealer," and not as an "owner." If the section here attacked should be declared unconstitutional and invalid, it would in no way affect this case.

6. In several grounds of the demurrer the securities law is attacked because of classifications made with respect to buying and selling securities. *Held:* None of these grounds show merit. Each and all of the classifications are reasonable and not arbitrary, and therefore are a valid exercise of the State's police power.

7. In a number of the grounds of the demurrer the securities law is attacked on the ground that it is void and of no effect, because in conflict with the State and Federal constitutions, which guarantee due process of law and equal protection of law. *Held:* None of these grounds show error. Statutes similar to this have repeatedly been upheld as against the same constitutional attacks, and it is needless to repeat the discussions of these questions, which are considered as settled. Hall *v.* Geiger-Jones Co., 242 U. S. 539 (37 Sup. Ct. 217, 61 L. ed. 480); Caldwell *v.* Sioux Falls Stock Yards Co., 242 U. S. 559 (37 Sup. Ct. 224, 61 L. ed. 493); Merrick *v.* Halsey & Co., 242 U. S. 568 (37 Sup. Ct. 227, 61 L. ed. 498). The California case, People *v.* Pace, 73 Cal. App. 548 (238 Pac. 1089), cited by plaintiff in error, is not controlling; and while entitled to the respect of this court, it deals with facts different from those here involved. There the question before the court had reference to sales by an owner.

8. The provisions of the securities law, that as a condition precedent to the issuance of a license the commission shall be satisfied

of "the good repute in business of the applicant," or that for lack of such good repute a license already issued may not be renewed, or that for such reason a license may be revoked, will not authorize the court to declare the statute unconstitutional for any reason shown by plaintiff in error in several grounds of the demurrer. Hall *v.* Geiger-Jones Co., 242 U. S. at p. 553 (supra).

9. The demurrer contains thirteen grounds. There are numerous repetitions of the same points stated in different ways. In several the law is attacked on the ground that the act places in different classes owners or issuers from that of dealers; that the portion having reference to the owners of securities or the issuers of securities is unconstitutional for stated reasons; that the same portion, that is, with reference to owners or issuers, is invalid because of vagueness, indefiniteness, and uncertainty. It is useless to deal with all of these in detail. It has been ruled above that none of these grounds contain any merit in so far as they concern the indictment in this case.

10. In ground seven of the motion for new trial complaint is made that the court erred in admitting the following evidence, to wit: "document purporting to be stock certificate No. 731, which said document was testified about and identified by the witness, L. D. Adams, as having been purchased from the defendant, and which reads as follows: Incorporated under the laws of the State of Delaware. Number 731. Shares 150. The Intercity Radio Telegraph Company. Preferred stock 500,000 shares. Par value $5 each. Common Stock 500,000 shares. Par value $5 each." The remainder of the document contains provisions usually found in stock certificates, including the certificate that L. D. Adams is the owner of 150 shares of the common stock of the corporation named, and concluding: "In witness whereof, the seal of the corporation and the signature of its duly authorized officers affixed, this Mar. 15, 1927, day of ———————— 19———. Signed E. J. Simon, President. George H. Tamlyn, Treasurer. Countersigned Mar. 15, 1927. Registrar and Transfer Company. Transfer agent and registrar. —————. The document bearing the following seal: Intercity Radio Telegraph Company, Delaware, 1921." This evidence was objected to on the ground that the execution of the alleged stock certificate had not been proved, and upon the ground that the indictment alleged that the defendant sold 150 shares of

said stock and alleged that this was a corporation and that it was organized under the laws of Delaware, and there was no evidence to support these allegations. *Held:* The court did not err in admitting this stock certificate. Under the undisputed evidence this certificate was sold by the defendant to the witness, L. D. Adams. Both parties, according to the evidence, treated it as being what it purported on its face to be, to wit, a certificate of stock in the corporation named, the same being a corporation under the laws of the State of Delaware.

11. Movant complains that there is no evidence to show that the stock certificate alleged to have been sold by the defendant to L. D. Adams was a Class "D" security, for the reason that the evidence clearly shows that the witness Adams, to whom the indictment charges the defendant "did sell and did offer to sell" certain specified stock, was himself a dealer within the meaning of the term "dealer" as defined by the Georgia Securities Law, and consequently any stock (no matter of what kind) or other securities sold to him was automatically Class "B" securities by virtue of the definition in section 9 and paragraph 4 of the securities law. *Held:* On inspection of the evidence this contention is not borne out. The evidence demanded a finding that Adams was not a dealer, as defined in the securities law (Ga. Laws 1920, p. 250, § 5).

(*a*) The brief of plaintiff in error states that this question is raised in the general grounds, and that it is also involved under special grounds 74, 75, 79, and 82. The record is very lengthy, and the grounds of the motion contain many repetitions and are not treated consecutively in the brief in the order in which they appear in the record. In the circumstances, we treat this ruling as a sufficient ruling on the special grounds just enumerated.

(*b*) Movant complains in ground 74, that, while the court instructed the jury as to the meaning of the word "dealer" as used in the act, the failure to charge the jury as to the meaning of the word "securities" and as to what the word "securities in the securities law includes" was prejudicial to the rights of defendant, because of certain stated testimony of L. D. Adams; that in view of this testimony movant insists the jury was authorized to find that Adams was a dealer in securities within the meaning of the securities law, and that the failure to charge as stated was error. *Held:* This ground, for the reason stated elsewhere, shows no error.

(c)   Movant also, in ground 75, complains that the court failed to charge that the same securities "might be classed as Class 'B' when sold to a dealer in securities, and might be classed as Class 'D' when not disposed of by the persons and in the manner provided for in section 9 of said Georgia securities law." *Held:* In the absence of an appropriate and timely written request such failure to charge was not error.

12.   Movant also, in ground 79, complains that the court erred in refusing a timely written request to charge the jury as follows: "I charge you that sales to any dealer are not subject to the provisions of the Georgia securities law.  Any person selling or disposing of, or offering to sell or dispose of, any stocks, bonds, debentures, or notes, is a dealer within the meaning of this law.  If, under this definition, you believe from the evidence that at the time of the sale and offer to sell, charged in the indictment, L. D. Adams was a dealer, as I have just defined a dealer, then the defendant had the right to sell and to offer to sell to L. D. Adams the securities described in the indictment without violating the Georgia securities law.  If since the passage of the Georgia securities law on August 17, 1920, as amended by the act of 1921, and before the time of the alleged sale and offer to sell to. L. D. Adams charged in the indictment, the said L. D. Adams had himself sold or disposed of any stocks, bonds, or notes, or had offered to sell or dispose of any stocks, bonds, or notes, I charge you that he thereby became a dealer and that thereafter no sale to him of any securities would be in violation of the Georgia securities law, and the defendant would not be guilty under such sale to such a party."  Movant contends that under the evidence Adams was a dealer within the meaning of the term as defined in the Georgia securities law.  *Held:* The evidence relied upon does not show that Adams was a dealer, but does show the contrary.  The written request was not pertinent to the issue and was properly refused.

13.   Movant complains in ground 82 that the court erred in not submitting to the jury the following defense which arose under the issues in said case and was supported by the evidence, that is, certain principles of law which are applicable where sales of stock are made to a dealer, the defendant contending "that the said Adams had become a dealer by selling the United Iron stock about which the said Adams testified; and that if the said Adams

sold said United Iron Stock or offered it for sale, that he thereby became a dealer within the meaning of the Georgia securities law." *Held:* For the reasons stated above, this requested charge with reference to a dealer was not applicable, and the court did not err in not submitting the same to the jury.

14. Movant complains in ground 76 that the court charged the jury that "defendant could not be convicted under either count of this indictment of selling securities referred to in this indictment, if the jury should find that these securities fell within either Class 'A', 'B' or 'C' of the Georgia securities law," and that the court erred in not charging the jury in this connection that the burden was on the State to prove beyond a reasonable doubt that said securities did not fall within Class "C" of said Georgia securities law, and that the failure to so charge was prejudicial to this defendant. *Held:* No error. Where the court correctly charges on one subject, it is not error that there is a failure to charge on some other subject in that connection.

15. In grounds 80 and 81 movant complains that the court erred in refusing to charge, as requested in writing, what securities would fall within Class "C" as defined in the act; that before the jury could determine that any stock or security was in Class "D," they would first have to determine from the evidence that it was not in Class "C." *Held:* No error. The principles contained in these requests were substantially covered in the general charge.

16. Grounds 4 to 72, inclusive, as stated in the brief of movant, complain of the admission of evidence in regard to advertisements and other sales of securities not named in the indictment. The brief of movant states that these grounds "may be considered together, in the interest of time." For the same reason the court will likewise deal with these grounds. *Held:* The evidence as to all of these transactions was admissible for the purpose of showing a scheme, plan, or system used by the defendant in the transaction for which the indictment was returned. *Cawthon* v. *State,* 119 *Ga.* 395 (46 S. E. 897); *Frank* v. *State,* 141 *Ga.* 244 (2 *a*) (80 S. E. 1016); *Williams* v. *State,* 152 *Ga.* 498, 521, 522 (110 S. E. 286); *Merritt* v. *State,* 168 *Ga.* 753, 754 (149 S. E. 46).

17. In grounds 84, 85, and 86 movant complains that while he was making his statement to the jury he was interrupted by the court as follows: (1) "In the course of his statement the

defendant said: 'In the testimony, referring to the Intercity, I was much surprised when it seemed to be the statement of the witnesses that there was any question as to the company being in operation and that it was an operating concern, and as a consequence my attorneys had sent wires.'" At this point the court interrupted the defendant, saying: "You can't exhibit papers to the jury; you can state the substance of them, what they have reference to, but you are not permitted under the law to read from anything." (2) "While the defendant was making his statement he desired to refer to certain issues of the Atlanta Journal and the Atlanta Constitution, daily newspapers published in Atlanta, Georgia, for the purpose of refreshing his memory as to dates and prices at which certain stock had been quoted, namely, stock of the Automatic Fuel Savings Company. In order to do this he arose from his seat and started to leave the witness stand to go to the place where the papers were. When he attempted to do this the court interrupted him and refused to allow him to refer to the papers in question, the court stating: 'I'll not permit you to open up and read books; the law doesn't contemplate that he might open up a big volume and turn to articles and cite them. The law doesn't contemplate that he shall open up a half dozen volumes over there and turn from page to page while he is making his statement; that isn't the rule. He has a right to make a memorandum about things he wishes to say—make such statement as he wishes to make, but not to read documents and papers on the stand from books and volumes.' Thereupon counsel for the defendant, desiring that the defendant might be given an opportunity to examine the papers without leaving the witness stand, said: 'Will the court permit him to make such statement—would he be permitted to look at these issues of papers to refresh his recollection as to dates and prices at which the stock was quoted?' In denying this request the court said: 'Not now. When he goes to the stand to make a statement, he is entitled to make one connected statement. He has a right to consult any memoranda that he may have with him or on his person, but he will not be permitted to leave the stand, open large books, turn through them and separate them and tell what he claims is in those books. The law doesn't contemplate that." *Held:* No abuse of discretion. In examining the grounds with reference to what transpired, the court did

not err in the rulings made, the same being necessary to confine the accused to subjects legitimately within the range of a proper statement.

18. Ground 73 raises questions which were dealt with in the rulings on the demurrer, and will not be repeated.

19. Other grounds of the motion for new trial not referred to in the brief of plaintiff in error are treated as abandoned.

20. The verdict is supported by evidence.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents from the ruling stated in the seventeenth division of the decision.*