24205. AMERICAN SURETY COMPANY OF NEW YORK
v. STATE OF GEORGIA.

778

Decided February 13, 1935. Rehearing denied February 27, 1935.

*Jones, Evins, Powers & Jones,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

Jenkins, P. J.   This is a scire facias proceeding for the collection from the principal and surety of the $15,000 penalty in a criminal supersedeas bond.   In 1927 Saunders was jointly indicted with Tiffany for selling and offering to sell as "dealer" certain shares of "Class D" stock, without first having obtained a license, in violation of the Georgia securities statutes, pleaded not guilty, and on September 27, 1929, was found guilty by a jury, and his punishment was fixed by the verdict and judgment as three to five years at hard labor in the penitentiary, "to be computed from the date of his delivery."   In carrying his case to the Supreme Court, he filed this supersedeas bond, conditioned, as required by section 1104 of the Penal Code (1910), that he would "be present in person in said Fulton superior court to abide the final judgment, order, and sentence of the court in said cause."   American Surety Company of New York signed the bond as surety.   On May 12, 1931, the Supreme Court of Georgia affirmed the judgment. *Saunders* v. *State,* 172 *Ga.* 770 (supra).   On June 15, 1931, the

remittitur was filed and the judgment of the appellate court was made the judgment of the trial court. By orders of the superior court, the supersedeas was extended "to remain in effect until said case is finally disposed of by the Supreme Court of the United States." On December 14, 1931, the United States Supreme Court entered its judgment dismissing the defendant's writ of error.

The trial calendar of the criminal division of the superior court shows that the case was assigned thereon for March 30, May 30, and June 10, 1932. The evidence is not clear as to just what happened on or between those dates, and as to whether Saunders was present on those dates in the court-room, or for what purpose he was there. Some of the testimony would have authorized a finding that he was in the court-room during a discussion of his case on one occasion. It appears, however, that his presence and purpose were "to secure an extension of time" in endeavoring to persuade the judge to reduce his sentence to a fine or permit him to make restitution and avoid imprisonment, giving him "time to get up the money and allow him to pay a fine if he did." But there is nothing to show that the judge was in any way informed that he was present for the purpose of abiding the final judgment or sentence of the court. All that appears is that, "if the judge had not granted the time, then he would have surrendered," and as stated by counsel for the surety in their brief, "the witnesses all agreed that there was no formal offer by Saunders or his counsel to surrender Saunders into the custody of the court." No judgment or order of the court was entered pending these negotiations, during which Saunders disappeared and was not rearrested. On September 28, 1933, when the case was assigned to the trial calendar, Saunders was called, and the surety was called upon to produce the body of the principal in court, in accordance with the condition of the bond that he should "be present to abide the final order, judgment, and sentence," and on default an order was entered reciting these facts and directing that a scire facias issue. The scire facias now under consideration was issued on the same date, and was served on the surety. It recited the default and ordered the principal and surety to show cause at the November term, 1933, why final judgment should not be entered on the recognizance. The surety filed a motion to quash and dismiss the scire

facias, upon the grounds that, (1) the surety could not be legally called upon to produce Saunders to abide a void and illegal judgment and sentence, and the verdict and judgment were void and illegal because the count under which he was indicted, found guilty, and sentenced was based on section 36 of the Georgia securities law of 1920 (Ga. L. 1920, pp. 250, 270), which provided only a misdemeanor punishment, and the verdict and sentence imposed for a felony under the amendatory act of 1922 (Ga. L. 1922, pp. 156, 172) were therefore illegal; and (2) that if the count in question was based on the amendatory act of 1922, the verdict and judgment were void because the amendment in its application to "dealers" in securities discriminated in favor of "issuers" of such securities, in that they were not subjected to the penalties provided for "dealers" such as Saunders, in contravention of the provision in the fourteenth amendment of the constitution of the United States guaranteeing the equal protection of the laws. The surety also demurred to the scire facias, on the grounds that, the State having taken no action on the bond either at the November term, 1931, or the January term, 1932, after the United States Supreme Court had dismissed the writ of error on December 14, 1931, it could not proceed, and the condition of the bond did not require the surety to produce the principal, at the September term, 1933, and that, a reasonable time having expired, this date was too late. The answer of the surety denied a breach of the bond, and set up that the condition of the bond had been met by Saunders' appearance in court; that it was released by his appearance and by a modification by the court of the original sentence, without its consent, in suspending the imprisonment sentence and permitting Saunders to go or remain at large to afford him opportunity to make restitution. The court denied the motion to quash, overruled the demurrer, directed a verdict in favor of the State, and denied the motion of the surety for a new trial. The evidence was as above indicated. Error is assigned on the general grounds, on the direction of a verdict, and on the exclusion of testimony from Saunders' attorney, as irrelevant, with regard to the purpose of Saunders in coming to Atlanta to respond to the call of his case on the calendar, and the purpose of Saunders and his counsel, if the court had not granted the request for time, to deliver Saunders over to the court and its officers. The brief of evidence shows that the witness was per-

mitted to testify elsewhere as to all essential parts of his excluded testimony.

■ One contention of the surety, under its motion to quash the scire facias issued on the supersedeas bond in question, is that the sentence of the defendant principal was void because it imposed imprisonment for a felony instead of punishment for a misdemeanor, as required by section 36 of the Georgia securities law of 1920. Ga. L. 1920, pp. 250, 270. The surety contends that it is the law of the case, under the decision of the Supreme Court in affirming the judgment of conviction against Saunders, the principal (*Saunders* v. *State,* supra), that the indictment was under the law of 1920 making the offense a misdemeanor, and not under the act of 1922 amending section 36 of the original law. Ga. L. 1922, pp. 156, 172. This contention is based on the following language in that decision : "Other grounds of demurrer contend that because the 'issuers' of securities, included in the class legislated against are not included in the caption of the act of 1922, amending the Georgia securities law, section 36 thereof discriminates in favor of 'issuers' in that they are not subjected to the penalties prescribed for dealers, brokers, solicitors, and agents, and that it therefore deprives defendant of the equal protection of law guaranteed by the Federal constitution. *Held:* Conceding that the act of 1922 is unconstitutional as contended by plaintiff in error, the indictment would not be affected. *The indictment is based on the securities law previously enacted,* and the case is not dependent on the validity of the said act of 1922 in the respect as contended. Under the *Smith* case, supra [161 Ga. 103, 129 S. E. 766], 'issuers' are not subject to the penalties imposed under the 'blue-sky' law. This does not render the act, as applied to plaintiff in error, void because in conflict with the due-process clause of the Federal constitution. The State may constitutionally make reasonable classifications, and a classification which exempts owners but penalizes dealers in the sale of securities would be reasonable and not arbitrary." (Italics ours.) It is strenuously argued that the italicized clause amounts to a holding that the defendant was indicted for a misdemeanor under the 1920 act, and that, the judgment imposing a felony sentence under the amendatory act of 1922 being a nullity, there was no breach of the bail bond by failure of the defendant to appear or of the surety to produce him to abide this void judgment and

sentence. We do not think that the language relied upon warrants such a construction of the decision. Section 18 of the act of 1922, amending the original section 36 of the act of 1920 by substituting a new section of that number, in so far as it affected "dealers" such as the present defendant and "issuers" of "Class D" securities, was substantially identical with the original section, save that the amending section made the offense a felony punishable as such rather than a misdemeanor. The court was dealing not with the penalty clause, but with the constitutionality and construction of the law as amended. The identity of the later statute with the original law of 1920 is apparently all that the court had in mind, since in the same paragraph it passed directly on the constitutional question raised as to the act of 1922 and not that of 1920, and expressly held that the fact that "issuers" of securities are not subject to penalties, under the decision in *Smith* v. *State*, 161 *Ga.* 103 (129 S. E. 766), does not render the act, as applied to plaintiff in error as a "dealer," void because of any conflict with the fourteenth amendment of the Federal constitution. If it had been intended to hold that the act of 1922 was not involved in the case, manifestly the constitutionality of that act would not have been thus determined. Furthermore, in paragraph 1 of the decision (p. 771), the court expressly construed section 36 in its amended form under the act of 1922, as well as section 9, paragraph 1 of that act, in determining three other grounds of the demurrer to the indictment, which attacked only the act of 1922. Also, in paragraph 5 (pp. 772, 773), the court further construed section 9, paragraph 1, of the act of 1922, and held that "the accused, as already stated, was indicted as a 'dealer' and not as an 'owner,'" and therefore that he was not affected by the constitutionality of this paragraph relating merely to an "owner." Manifestly, a large part of the decision would not have been devoted to the constitutionality and construction of the act of 1922, if the act of 1920 were the one in question. Furthermore, it should be borne in mind that there could have been no valid indictment or conviction under section 36 as it existed in the act of 1920, because that original section had been absolutely repealed by section 18 of the act of 1922. The amendatory act provided that this section be amended by *"striking said section* and substituting in lieu thereof the following," and this was followed by the substituted section making the offense as to "dealers"

a felony instead of a misdemeanor, and adding certain provisions as to real estate and publishers of advertisements which are immaterial to this case. The original misdemeanor provisions were therefore no longer in existence when the defendant was indicted in 1927 as a "dealer" for an offense committed in 1927. It also appears from the indictment itself and the caption of the judgment that the defendant was both indicted and sentenced for a "felony" in a violation of the "securities law."

But even if the decision of the Supreme Court could properly be construed, as contended, as a holding that the defendant was indicted only under the act of 1920 for a misdemeanor, so that his sentence for a felony was a nullity, this would not result in a discharge of the defendant or the surety. Although it is the general rule that trial courts have no power, after the end of the term at which a sentence is imposed, to "modify and change the sentence formerly imposed," and that such a new judgment is a nullity (*Porter* v. *Garmony,* 148 *Ga.* 261, 262, 96 S. E. 426; *Auldridge* v. *Womble,* 157 *Ga.* 64, 120 S. E. 620), nevertheless a defendant, after a plea or verdict of guilty, may, when a void sentence has been imposed, be returned before the proper court "in order that a legal sentence may be imposed upon him in accordance" with law. *Morris* v. *Clark,* 156 *Ga.* 489 (2) (119 S. E. 303); *Oliver* v. *Lowry,* 173 *Ga.* 892, 893 (161 S. E. 828); *Hollins* v. *State,* 48 *Ga. App.* 672 (173 S. E. 179). The condition of the instant bond requiring the defendant to be personally present in the trial court "to abide the final judgment, order, and sentence of the court," and the defendant after the verdict of guilty still remaining subject to lawful sentence, it was the duty of himself and his surety, after the United States Supreme Court had dismissed his appeal from his conviction, following the affirmance of the judgment of conviction by the Supreme Court of Georgia, that he appear in the trial court to "abide" such final sentence as would then be rendered. If the original sentence was a nullity, on motion of the defendant, the State, or the court itself, a lawful sentence could then have been imposed, since the court would not have lacked the powers which the Supreme Court has held it could be directed to exercise after habeas corpus proceedings. Both the original order of forfeiture and the scire facias issued thereon in September, 1933, recite merely that the defendant was called and his surety was called to

produce him in court, and that the forfeiture was for his failure to be "present to abide the final order, judgment, and sentence of the court," as required by the bond. It is nowhere stated that the final sentence which would then have been imposed would have been the original sentence; and even if the original sentence were shown to have been void, this court can not presume that the trial judge would not have done his duty in imposing a proper lawful sentence. For these reasons, the court properly denied the first ground of the motion to quash the scire facias.

■ The second ground of the motion to quash is also without merit. It is contended that, even if the offense charged was under the amendatory act of 1922, the verdict and judgment were void, because the act is unconstitutional in discriminating against "dealers" and in favor of "issuers" of securities; since issuers are not subjected to the penalties imposed on dealers such as the defendant in this case. While, under the decision in *Smith* v. *State*, supra, it was held that so much of the amended section 36 of the securities law of 1922 as made it a felony for an "issuer" of Class D securities to sell or offer the same without a license was unconstitutional and void by reason of the *title of the statute*, and the Supreme Court in passing upon the judgment of conviction in the present case therefore held that "the statute in question must be construed as if the word 'issuer' were not contained in section 36" (172 *Ga.* 771), the court nevertheless determined the constitutional question here raised, which was also before it in that case, adversely to the defendant. On page 772 it was said: "This does not render the act, as applied to plaintiff in error, void because in conflict with the due process clause of the Federal constitution." Then, with manifest reference to the grounds of demurrer stated at the beginning of the same paragraph of its decision, that the statute "discriminates in favor of issuers in that they are not subjected to the penalties prescribed for dealers" and others mentioned, and "therefore deprives defendant of the equal protection of law guaranteed by the Federal constitution," the court added: "The State may constitutionally make reasonable classifications, and a classification which exempts owners but penalizes dealers in the sale of securities would be reasonable and not arbitrary." Had the Supreme Court not already decided this constitutional question contrary to the contentions of the plaintiff in error, and were the

question not thus clearly settled, this court would be without jurisdiction of this writ of error.

■ ■ The contentions of the demurrer that, after the Georgia Supreme Court had affirmed the judgment of conviction, and the United States Supreme Court dismissed the defendant's writ of error on December 14, 1931, leaving the original judgment in force, the State must have proceeded to forfeit the bond either at the first term thereafter, during the November term, or at the January term, 1932, and within a reasonable time, and that the State is debarred by its failure or laches from proceeding in the present forfeiture proceedings, begun at the September term, 1933, are unsupported by any provision of statute or any principle of law of which we are aware. The original judgment provided that the three to five year sentence should begin "from the date of [the defendant's] *delivery."* After the final disposal of the case by the United States Supreme Court and pending such "delivery," no statute of limitations or other prohibition of law intervened to prevent the State from proceeding as it has done.

■ The court did not err in denying on the general grounds the surety's motion for a new trial from the verdict directed in favor of the State on the scire facias forfeiting the defendant's bond. Nor was the direction of the verdict error under the record and evidence, upon the contention that there was evidence which would have authorized the jury to find that the defendant had appeared in court and satisfied the condition of the bond, and that the liability of the surety was therefore discharged. The bond was a recognizance to obtain a supersedeas while the cause was pending in the appellate courts. It was conditioned, as required by the Penal Code, § 1104, that the "defendant shall be present in person in said Fulton superior court to *abide* the *final* judgment, order, and sentence of the court." (Italics ours.) The surety insists that there was evidence from which the jury could have found that on one occasion the defendant was physically "present" somewhere in the court-room, when his criminal case was set on the trial calendar on one of the dates, March 30, May 30, or June 10, 1932, at which time consideration was given to his counsel's application to permit him to undertake to raise money to remunerate those suffering from his offense, so that if he succeeded, he might be permitted to pay a fine; and that the presence of the defendant

■

in the court-room during the hearing of such application of the defendant and the action of the court constituted a satisfaction of the bond, on the theory of a full compliance with its condition, or that it constituted a taking into custody of the defendant, or constituted such a modification of the original sentence as to increase the risk of the surety and work a release. The most that can be said from the evidence, however, is that on one of the occasions stated, the defendant was physically present somewhere in the court-room during a discussion between his counsel and the judge as to whether he should be allowed to make restitution, pay a fine, and avoid imprisonment, and be given time to raise the money before being ordered into custody. As conceded by the surety, "the witnesses all agreed that there was no formal offer by Saunders or his counsel to surrender Saunders into the custody of the court." It does not appear that the judge was ever informed that he was present in court to abide the final judgment or sentence or was present at all. There was some testimony by his counsel that, "if the judge had not granted the time, then he would have surrendered," but it does not appear that such purpose was disclosed to the judge. All that the evidence really indicates is that he was present for the purpose of obtaining a reduction of his sentence to a fine, and that there was no imposition of any judgment or sentence while he was endeavoring to raise the money. Whether he actually remained in court until the close of the discussion, or whether, if the court's intimation had been adverse to his counsel's requests, he would have been then and there available for seizure by the sheriff, is not disclosed. Pending the series of negotiations, he disappeared, and the proceedings to forfeit the bond were taken. There was no commitment by the court as to what the court would finally do. There was no order of the court modifying the sentence; and there was no assumption by the court or the sheriff of any custody or control of the defendant. As the original trial judge himself expressed it in his testimony, all that he did was "inaction, no action, but just failure to act at all on the matter." While such inaction by the court may be said to have resulted in a delay in the effort of the court to impose and enforce the final sentence, can it be said that the actions of the defendant or the inaction of the court constitute either a surrender of the defendant, or a compliance with the bond, so as to release the surety?

"Bail may surrender their principal in vacation to the sheriff, or in open court, in discharge of themselves from liability." Penal Code (1910), § 960. The privilege of "surrender" exists independently of compliance with the condition of the bond, and even before the time for compliance. Under the concession of counsel, there was no formal surrender or offer to surrender the defendant into the custody of the court. Are the facts, as they may be extracted from the record most favorably to the surety, sufficient to show what would amount in law to a "surrender," or to a compliance with the condition of the bond that the defendant appear in court "to abide the final judgment, order and sentence?" In *Williams* v. *Jenkins,* 53 *Ga.* 167, it was held: "There can be no discharge of the forfeited recognizance but by the surrender of the defendant into the custody of the court or its officers. The highest evidence of this is an *entry on the minutes.* There is no evidence here at all of a surrender into custody. *Being in court is one thing, being in custody another.* . . There was probably talk of a settlement but it was not effected. To permit so loose a discharge of bonds as this would be bad public policy." (Italics ours.)

This court held, in *Perkins* v. *Terrell,* 1 *Ga. App.* 250 (58 S. E. 133) : "Producing or presenting a principal in court is not all that is required to discharge the obligation and relieve securities from their liability under a criminal bond. In order for a surrender of the principal in open court to be effective, the attention of the court must be called to the presence of the defendant principal, and the intention to surrender him must be definitely expressed and understood. The highest evidence of surrender is an exoneretur entered upon the minutes." In an ordinary criminal *appearance* bond, "the bail is not bound for the appearance of the principal at a term of the court subsequent to that at which he was tried, convicted, and *sentenced,*" for, after the sentence, the sentence itself operates as an exoneretur, without any entry thereof on the minutes, to discharge the bail. *Roberts* v. *Gordon,* 86 *Ga.* 386 (12 S. E. 648) ; *Governor* v. *Kemp,* 12 *Ga.* 466. But before sentence is passed, as was held in *Dennard* v. *State,* 2 *Ga.* 137, 138, such a bond "binds the principal not only to be and appear at the term to which it is returnable, but to continue to appear until acquitted, or in some legal way discharged, or *if tried and found guilty, until the sentence of*

*the court is passed upon him,* unless he is permitted to depart sooner by leave of the court had. And the evidence of this leave being had is an exoneretur or other order of discharge entered upon the minutes. The bond is intended to insure the appearance of the accused to answer to the court of and concerning the offense charged; to answer not only to the charge but also to *the judgment."* (Italics ours.) In *Andrews* v. *Hardwick,* 29 *Ga. App.* 251 (114 S. E. 644), this court said: "A criminal recognizance which provides that the principal shall be and appear at a certain named court at a certain term and from day to day and from term to term 'to answer to a prosecution' for a certain offense, and 'shall not depart thence without leave of said court,' obligates the surety to produce the principal to abide the sentence of the court in the event the latter is convicted or enters a plea of guilty. It follows therefore that where the principal pleaded guilty and failed thereafter to appear *to abide the sentence of the court,* the surety is, in the absence of a surrender of the principal by him, or the principal's discharge by the court, liable upon the recognizance. *The bare verbal permission given by the court to the principal, after entering a plea of guilty, to depart and return later in the day to receive sentence, is not a legal discharge, and will not exonerate the surety from the obligation under the recognizance. . . The mere producing by a surety of the principal in court to answer to the charge or the principal's entering of a plea of guilty is not a surrender by the surety."* (Italics ours.) A like ruling was made in *Davis* v. *Hardwick,* 33 *Ga. App.* 500 (126 S. E. 889). Thus, the rule in this State appears to be somewhat different from that in other States with respect to the continuance of liability after a plea or a verdict of guilty and before sentence, some States holding that the liability of the surety ends after the conviction either by plea or verdict. See 3 R. C. L. 42, § 49. But the authorities hold that, where the accused is required by an *ordinary bail bond* to appear in court to answer a charge, such appearance does not mean a mere temporary one, but the accused must attend until the proceedings are legally terminated, and remain within the reach of the process of the court. See People *v.* Jaynes, 27 Barb. (N. Y.), 58, 61; State Treas. *v.* Woodward, 7 Vt. 529, 532; Harwood *v.* Robertson, 2 Hill. (S. C.), 336, 338. As was said in Seely *v.* Evans, 19 Wendell (N. Y.), 458, 462: "In

most, if not all cases, where a party is bound to a personal appearance in court, to answer any charge or action brought against him, he must not only appear, but *must remain in court until discharged by due course of law;* and how long he must attend depends on the nature of the proceeding and the course and practice of the court." (Italics ours.)

In the instant case, unlike an ordinary bail bond, the *supersedeas bond* did not require merely an appearance to meet the criminal charge, but the bond was for the purpose of suspending the serving of the sentence of imprisonment until the cause should be ripe for a final judgment and sentence, if and after the appellate courts should affirm the judgment. This bond necessitated the defendant's appearance "to *abide*" the *final* sentence. This express condition in the supersedeas bond was thus even more stringent in terms than that of an ordinary appearance bond, given before conviction. The decisions of our courts as to what would constitute a compliance with such an appearance bond, or a surrender thereunder, would therefore be applicable to the bond now in question. It follows that, under the orders and entries shown in the record and the oral testimony, the obligation of the principal and the surety that the principal should appear to "*abide*" the *final* sentence continued until such sentence was imposed, or at least until the principal's readiness to "abide" such sentence was indicated to the court, and that no discharge of the principal was shown either by any final sentence or by any indication to the court of the principal's readiness; the evidence failing to show any formal surrender either to the court or any proper officer, any offer to surrender, any statement to the court that the principal was present to "abide" its final sentence, but showing merely a conditional purpose on the part of the principal and his counsel that a surrender would be later made if they were unsuccessful in obtaining a modification of the original sentence; and no entry on the minutes appearing to show either any discharge of the principal or surety, or any surrender of the principal, or any exoneretur, or any leave to the defendant to depart the court. Whether or not a statement to the court by the principal or his counsel or by the surety, while the principal was present in court, that he was ready for the final sentence to be imposed, would amount to a surrender or otherwise effect a discharge of the bond, in the absence of any such state-

ment, the defendant's mere physical appearance in the court-room at some undisclosed time during his counsel's endeavor to persuade the court to reduce and not immediately enforce sentence did not affect the right of the court then or later to impose final sentence upon him, or the right of the State to proceed for the forfeiture of his bond when he disappeared. The risk of the surety was not increased or impaired, since its obligation continued to deliver the defendant in person to the court "to abide" the final sentence.

■ Since, under the preceding rulings, it was irrelevant as to what the purpose of the defendant and his counsel may have been in having the defendant "come to Atlanta," or as to their purpose to deliver him to the court if their negotiations seeking a reduction in his sentence should fail, where such purpose was never expressed to the court, there was no error, under the special grounds of the motion for a new trial, in excluding this evidence. Moreover, it appears from the brief of evidence that the witness was allowed to testify elsewhere as to all essential portions of the excluded testimony.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*