McHugh, J.
This is a civil action brought by Francis X. Haggerty (“Haggerty”), individually and by his guardian James M. Haggerty, against Joseph lannacci (“lannacci”) and the Commonwealth of Massachusetts (“Commonwealth”). Haggerty and the Commonwealth have filed cross-motions for summary judgment on counts III and IV of Haggerty’s First Amended Complaint.[1] For the reasons stated below, judgment is allowed for Haggerty.
BACKGROUND
The record in this case indicates that the following material facts are undisputed:
Haggerty has a drug and alcohol problem of long standing. In 1994, Haggerty made the acquaintance of lannacci, a drug dealer, from whom he subsequently purchased drugs. On March 24, 1995, lannacci was arrested and subsequently arraigned in Middlesex Superior Court on charges of trafficking in cocaine and other drug offenses. Bail was set at $250,000 surety bond or $25,000 cash. From jail, lannacci called Haggerty, asked for bail money and promised to repay Haggerty whatever he contributed towards Iannacci’s bail. On May 2, 1995, Haggerty, eager to spring lannacci, delivered to the office of Iannacc ,’s attorney, John McBride, $20,000 towards Iannacci’s bail. The $20,000 consisted of a treasurer’s check for $9,000 payable to the Clerk of Middlesex Superior Court and $11,000 in cash.
On May 3, 1995, lannacci, having raised the other $5,000 on his own, posted the $25,000 and was released. lannacci, however, listed only himself as the surety on his recognizance and his was the only name on the bail receipt. The day he was released, lannacci met Haggerty and told him that he could not repay him immediately. He promised to do so when he could and gave Haggerty the bail receipt. When, shortly thereafter, James M. Haggerty was appointed Haggerty’s guardian, Haggerty turned the bail receipt over to him.
lannacci never repaid Haggerty and both Haggertys began at some point to fear he never would. Accordingly, they filed this case against lannacci on May 9, 1996, the day Iannacci’s case was initially scheduled for trial. They named lannacci and the Clerk of Court for Middlesex County as defendants, the latter as an alleged “Defendant In Trustee Process.” At the time they filed the action, they filed a “Motion Of The Plaintiff Upon Short Order Of Notice To Correct Court Records Concerning Identity Of Sureties On Bail Of Joseph lannacci,” seeking an order compelling the Clerk to recognize Haggerty as a co-surety on Iannacci’s bail to the extent of $20,000. Attached to the motion were a supporting affidavit from Haggerty and exhibits, including a copy of the recognizance. The motion was presented to and allowed by the court (Brassard, J.) ex parte and the requested order issued.
Haggerty’s attorney then filed a copy of the order in the criminal session where Iannacci’s case was being called and also filed a “Motion Of Co-Surety To Surrender Of Defendant And Return Bail Money To Co-surety.” Before the motion was heard, Haggerty’s attorney gave a copy of his motion and a copy of this court’s order to Iannacci’s attorney and to Michael Friedland, the Assistant District Attorney who was handling the criminal case. Present in the courtroom when the motion was heard were Mr. Friedland, Inspector William Jolly of the Woburn Police Department, lannacci and Mr. Iannacci’s attorney. Mr. Iannacci’s attorney opposed the motion. Friedland took no position on it although Inspector Jolly had told Friedland that he desired Iannacci’s surrender.
After the hearing, the court (Grasso, J.) denied the motion, and instead entered an order that no bail money was to be returned to lannacci without the joint signatures of Haggerty and lannacci.[2] Haggerty’s status as a co-surety was reaffirmed in a subsequent order in this case on June 17, 1996,[3] a copy of which was docketed the same day in the criminal case.[4]
Mr. Friedland did not believe on May 9, 1996 that the Commonwealth was prejudiced by naming of Hag-gerty as a co-surety. Mr. Friedland later examined all the papers on file in the present case and was of the opinion that the Commonwealth had no interest in its outcome. Accordingly, the Commonwealth filed no motion to intervene.
Unfortunately for all concerned, lannacci defaulted on July 21, 1997 when his case was called for trial. *272 Consequently, on August 15, 1997, the Commonwealth served on Mr. Haggerty a motion for forfeiture of bail. The motion was heard in the First Criminal Session on August 29, 1997. At the hearing, the Commonwealth made no claim that Haggerty had been improperly designated a co-surety. At the conclusion of the hearing, the Court (Barrett, J.) ordered $5,000 of the bail forfeited and deferred judgment on the remaining $20,000 pending the outcome of this action.[5]
In September of 1997, Mr. Haggerty filed his First Amended Complaint in this action. The First Amended Complaint added the Commonwealth as a defendant and added counts III and IV. Count III seeks a declaratory judgment under G.L.c. 231A, §1 et seq. that Haggerty is exonerated from liability as a surety and/or that the Commonwealth’s failure to return to Mr. Haggerty $20,000 of the bail money is a breach of contractual obligations implied by law. Count IV seeks a declaratory judgment under G.L.c. 231A, §1 et seq. that G.L.c. 276, §74 requires the Commonwealth to show cause why, in the interests of justice, Mr. Haggerty’s interest in the bail should be forfeited.[6]
The Commonwealth filed a motion to dismiss the action which the court (Neel, J.) denied without opinion on December 15, 1997. Now before the Court, as stated, are the Commonwealth’s motion for summary judgment on counts III and IV of the First Amended Complaint and Haggerty’s cross-motion for summary judgment on the same counts.
DISCUSSION
1. Standard
Summary judgment is appropriate where there are no genuine issues of material fact and where the record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on any relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party has satisfied its burden, the opponent then has the burden of responding with specific facts showing that there is a genuine triable issue on some relevant issue. John B. Deary, Inc. v. Crane, 4 Mass.App.Ct. 719, 722 (1976). A party who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the other party’s case or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
2. Is Haggerty a Surety?
The Commonwealth first claims that it never entered into a suretyship agreement with Haggerty and that Haggerty never assumed the obligations of a surety in regard to Iannacci’s recognizance on bail. It is simply too late in the day for the Commonwealth to make that argument.
After Haggerty obtained the ex parte order in this case naming him as a surety, he showed that order to Mr. Friedland, the Assistant District Attorney who was responsible for the criminal case, or at least alerted him, through filing the “Motion of Co-Surety To Surrender . . . Defendant and Return . . . Bail Money to Co-Surety,” that he claimed to be a co-surety and had obtained at least some judicial approval of that claim. The Commonwealth made no contention, then and there, that Haggerty was not a co-surety or that Haggerty’s motion was somehow deficient because it failed to account for the absence of a contract running directly between Haggerty and the Commonwealth. Had the Commonwealth then objected, on grounds that Haggerty had not assumed the duties of a surety properly, or on grounds of Haggerty’s general unsuitability to be a surety or on any other grounds, Haggerty could then and there have sought to disprove them. Most important, had the Commonwealth suggested, as it apparently does now, that the nature of the Iannacci-Haggerty relationship was insufficient to make Haggerty a surety, Haggerty could have examined Iannacci, who was then in the courtroom but who, now that the Commonwealth has raised the issue of Haggerty’s status, is somewhere unknown.
On succeeding occasions when Iannacci appeared in court, Haggerly was there as well and the Commonwealth raised no issue concerning Haggerty’s surety-ship status. On June 17, 1996, this court entered in this case an order requiring the clerk to insure that the Court records reflected Haggerty’s status as a co-surety. At all times thereafter — indeed, at all times since May 9, 1996 — those records in fact have reflected Haggerty’s status as a surety. At no point did the Commonwealth object to Haggerty’s status and at no point did it seek to intervene in this action, as it surely had a right to do, see Mass.R.Civ.P. 24(a)(2), to contest that status or to seek a modification of the preliminary orders the court had entered.[7]
The Commonwealth thus stood by silently while Haggerty, Iannacci and the court all were visibly acting on the premise that Haggerty in fact had a suretyship relation with the Commonwealth. It is true, of course, that silence frequently does not prevent one from later making a statement he or she could have made at the time he or she elected to stand mute. See, e.g., Marsh v. S.M.S. Co., 289 Mass. 302, 307-08 (1935); J.H. Gerlach Co., Inc. v. Noyes, 251 Mass. 558, 565 (1925). But that is not always true.
The intention by one’s conduct to induce another to change his situation, which is said in many of the cases to lie at the foundation of the doctrine of estoppel in pais, is commonly inferred from the conduct itself. It is sometimes even conclusively presumed from it, or, rather, the actor is held to be bound by the inference of his intention legitimately *273 drawn from his acts by the party with whom he is dealing. If his conduct is in fact acted upon by another, and is of such a kind that a reasonable man would rely on it, and would believe that he meant it as an inducement to be acted upon, he is bound by it. And this is often true of conduct by negligence or omission, where for any cause it is the duty of a person to disclose the truth.
Tracy v. Lincoln, 145 Mass. 357, 359-60 (1887). Accord D'Almeida v. Boston & M.R.R., 224 Mass. 452, 455-56 (1916).
In the absence of any claim by the Commonwealth that it had no suretyship relationship with him, it surely was not unreasonable for Mr. Haggerty to proceed, as he did, on the assumption that the order requiring recognition of him as a surety sufficiently established his status as such. Acting on that assumption, there was no need for him to present a fuller description, through Iannacci, of the relationship between himself and Iannacci or to make whatever unspecified undertakings the Commonwealth now claims were required if Haggerty was to fulfill his suretyship obligations. To claim now that earlier unstated but curable deficiencies prevent Haggerty’s assertion of a suretyship claim is simply to seek unfair exploitation of suretyship requirements a reasonable person would have assumed from the Commonwealth’s silence were not at issue. That the Commonwealth may not do.
3. Was Haggerty Exonerated from Liability as a Surety?
Haggerty claims that he was exonerated from any liability as a surety when he offered to surrender Iannacci on May 9, 1996. He contends that the court had no discretion to decline the surrender and that its failure to do so exonerates him from liability to the Commonwealth following Iannacci’s departure.
No reported Massachusetts case has decided the issue Haggerty’s claim presents.[8] Several statutes and cases, however, contain relevant principles. First of all, G.L.c. 276, §68, a statute that has been in force in the Commonwealth for a considerable time, provides that:
Bail in criminal cases may be exonerated at any time before default upon recognizance by surrendering their principal into court or to the jailer of the county where the principal is held to appear... [I]n all cases where bank books, money or bonds are deposited by the surety, the court shall thereupon order the bank books, money or bonds so deposited to be returned to the surety or his order, and to be reassigned to the person entitled thereto. They shall deliver to the jailer their principal, with a certified copy of the recognizance, and he shall be received and detained by the jailer . . . (Emphasis added.)
The statute in large part embodies the common law. At common law, sureties were empowered to seize their principals, surrender them and obtain exoneration “whenever they chose to do so.” Taylor v. Taintor, 83 U.S. 366, 371 (1873). As the Court explained, “(t]he bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.” Id. at 371 -72, quoting Anon.'s case, 6 Mod. 231 (1703). Accord, Commonwealth v. Brickett, 25 Mass. 138, 140 (1829); State v. Nugent, 508 A.2d 728, 731-32 (Conn. 1986); Restatement of Security §204, comment c (1941) (“Since the surely voluntarily assumes a large responsibility for the appearance of a defendant, he may terminate this responsibility at his own volition by delivering the defendant to the proper officer”).[9] If a surety surrenders a principal to a proper officer at a proper time and place, exoneration is mandatory. Mannina v. Mannina, 281 N.Y.S. 329, 330 (App.Div. 1935). Moreover once a surety surrendered a principal, the surety cannot “be affected by anything that afterwards occurrfs].” Reed v. Maynard, 93 Mass. 394, 395 (1865), citing Gen. Sts. c. 125, §§15-19 (1860). See also County of Los Angeles v. Stuyvesant Ins. Co., 38 Cal.Rptr. 713, 715 (Cal.App. 1964), People v. Loomis, 152 P. 143, 145 (Colo. 1915).
G.L.c. 276, §68 imposes only two conditions for a surety’s surrender of a principal. First, the surety must surrender the principal into court or to the jailer of the county where the principal is held to appear. In this case, Haggerty’s motion to surrender Iannacci was offered to this Court while Iannacci was present and the terms of the motion certainly were sufficient to communicate to this Court his intent to do so. See Van Gilder v. People, 227 P. 386, 387 (Colo. 1924); Davis v. Hardwick, 126 S.E. 889, 889-90 (Ga.Ct.App. 1925) . At the time Haggerty’s motion was presented, the court had an opportunity to place Iannacci in custody for Iannacci had not by then either defaulted or fled from the courtroom. See Am. Surety Co. of New York v. State, 179 S.E. 407, 412 (Ga.Ct.App. 1935); Worth v. State, 177 N.E. 235, 236 (Ohio App. 1931).
Second, G.L.c. 276, §68 requires the surety to deliver with the principal a certified copy of the recognizance but only if the surety surrenders the principal to a jailer. The statutory provision clearly is designed to provide the jailer with a ready means for determining whether the surrender and immediately ensuing custody are proper and lawful. Cf. Ex parte Graham, 234 S.W. 176, 177 (Ark. 1921). The court where the principal is held to appear has immediate access to the case papers and docket and needs no other documents to determine a surrender’s propriety.[10]
In light of all this, when Haggerty offered to surrender Iannacci to this Court in conformity with G.L.c. 276, §68, the court could either accept the surrender or, by electing not to do so, discharge Mr. Haggerty from the consequences of what happened thereafter. In effect, the court made the latter choice and Mr. Haggerty thus is entitled to a judgment so declaring.[11]
*274 ORDER
In light of the foregoing, it is hereby ordered that Haggerty’s motion for summary judgment against the Commonwealth on Counts 3 and 4 of the complaint should be, and it hereby is, ALLOWED. Judgment shall enter on those counts declaring that plaintiff Francis X. Haggerty is a surety on the recognizance of Joseph Iannacci in the case styled Commonwealth v. Joseph Iannacci, Middlesex Criminal Docket No. 95-0632 and, notwithstanding Iannacci’s default, is entitled to the return of $20,000 now being held by the Commonwealth to assure Iannacci’s appearance for trial.

 Counts I and II set out claims against Iannacci who is in parts unknown.

 The docket entry regarding the May 9 order reads as follows:
Re: Bail. The Court, Grasso. J., this day orders no bail to be returned to Defendant Iannacci, unless there is a joint signature of Deft. Iannacci and Francis X. Haggerty. Please refer to civil case #96-2745 (this case]. See Motion (P#18) [Haggerty’s Motion to Surrender],

 This court’s June 17 order read as follows:
Order: the present order of this court shall remain in effect(. The] plaintiff Francis X. Haggerty shall remain as a named co-surety on the bail posted for the defendant Joseph Iannacci in Middlesex Superior Court #96[-]632 to the extent of $20,000 and this money shall be returned to Francis X. Haggerty at the conclusion of that case. A copy of this order shall be placed on [file] in Middlesex Superior Court Criminal Docket #95-632.

 The docket entry in the criminal case contained the text of the order entered in this case followed by the statement that “[t]his order came out of Civil Docket #96-02745D (Justice Brassard)!.]”

 The court’s order was as follows:
Aug. 29, 1997. At the hearing before me, the claimant, F.X. Haggerty, made no claim for $5,000 of the $25,000 cash bail. Consequently, I order this $5,000 portion of the bail forfeited. As to the remaining $20,000, there is a civil action for declaratory & other relief pending (96-2745) which will dispose of the issues here raised including the disputes between the co-sureties and whether one or both sureties are entitled to the $20,000 in light of the defendant’s default in the present case. This court will, therefore, take no action at this time regarding the $20,000.

 The aim of Count IV is not entirely clear. G.L.c. 276, §74, entitled “Judgment for whole or Part of Penalty,” provides as follows:
If the penalty of a recognizance of a party or witness in a criminal prosecution is adjudged forfeited, the court may render judgment, upon such terms as it may order, against the principal or surety, or both, for the whole of the penalty with interest, or, in its discretion, for a part thereof, upon the filing in the case of a certificate of the district attorney or prosecuting officer stating that the interests of justice would be furthered thereby and setting forth specifically the reasons therefor; and no person shall, on behalf of the commonwealth, accept in satisfaction of any such judgment or any new judgment entered on review under Section seventy-six any sum less than the full amount thereof.
Apparently, plaintiff seeks in Count IV a declaration that the Commonwealth is required to file with the judge in the criminal case a certificate taking a position directly contrary to the position the Commonwealth is taking in this case. It is doubtful whether that is here, if ever, a proper route to the goal plaintiff seeks.

 The Commonwealth has not maintained and cannot maintain that it did not know where to seek relief if it disagreed with the suretyship order. See nn. 2, 4, supra

 The questions whether a court can deny a tendered surrender, and whether such a denial exonerates a surety, were raised but expressly reserved in Commonwealth v. Stuyvesant Ins. Co., 366 Mass. 611, 614 (1975).

 But see Commonwealth v. Stuyvesant Ins. Co., 366 Mass. 611, 614 n.4 (1975) (surety may incur liability to principal if surely breaches contract without adequate reason by prematurely surrendering principal to authorities). In this case, Haggerty claims that he had good reason to fear that Iannacci would default and Iannacci in fact did default.

 The fact that there are multiple sureties in this case makes no difference. One of multiple sureties may surrender the principal. State v. Doyal 12 La.App. 653, 654 (1857). See also Nichols v. United States, 22 F.2d 8, (1st Cir. 1927); Spooner v. Smith, 67 S.E. 813, 814 (Ga. 1910).

 There is no need for coercive relief. The declaration undoubtedly will lead to an order in the criminal case directing the money’s return. In view of the result here reached, there is no occasion to consider whether the Commonwealth breached any contractual obligations implied by law, whether the Commonwealth is subject to trustee process or whether Haggerly is entitled to any relief under G.L.c. 276, §74. Nor does this court’s ruling conflict with the general rule that declaratory relief will not be granted during a pending criminal prosecution. District Attorney for the Suffolk Dist. v. Watson, 381 Mass. 648, 659 (1980); Norcisa v. Bd. of Selectman of Provincetown, 368 Mass. 161, 171-72 (1975). The court having jurisdiction of the criminal case, after all, expressly deferred to this court for a judgment regarding the return of bail. Moreover, Iannacci has been in default for more than a year and the Commonwealth’s obligation to Haggerty is wholly independent of the substantive issues in the criminal case.